William J. O'SHEA, Appellant,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellee.

No. 17225.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 22, 1979.

Rehearing Denied March 29, 1979.

Butler, Binion, Rice, Cook & Knapp, Michael W. Fox, Houston, for appellant.

John A. Daniel, Dallas, for appellee.

DOYLE, Justice.

Mr. William J. O'Shea (O'Shea) appeals from a judgment in favor of International Business Machines Corporation (IBM) for $756.00 plus interest and $689.00 attorney's fees.

IBM filed suit against O'Shea in Dallas County, Texas, based on a written agreement between them executed in Houston, Texas, for the purchase of an IBM Correcting Selectric II typewriter, alleging that O'Shea failed to pay for this equipment. In the alternative, IBM also alleged that O'Shea's omission, not calling IBM more than once, prevented them from installing the typewriter. Defendant O'Shea answered, filed a plea of privilege, which was sustained, and thereafter filed a counterclaim against IBM claiming it failed to comply with the contract and violated Art. 17.-50 of the Texas Deceptive Trade Practices-Consumer Protection Act by unconscionable actions. On special issues the jury found that the failure of IBM to install the typewriter was due to an act or omission by O'Shea. They did not find that O'Shea did not notify IBM within a reasonable time after delivery of the typewriter that the typewriter had not been installed. The jury found that the counterclaim brought by O'Shea against IBM was groundless and brought in bad faith or for the purpose of harassment. The judgment awarded IBM the purchase price of the typewriter and attorney's fees on its defense of O'Shea's counterclaim based on the jury's finding that the counterclaim was groundless and in bad faith or for harassment. O'Shea appeals.

The immediate question facing the court is presented by O'Shea's points no. 1 and 2 which raise the questions of an instructed verdict and the insufficiency of the evidence to support the jury's finding to Special Issue no. 1, which reads as follows:

"Do you find from a preponderance of the evidence that the failure of International Business Machines Corporation to install the typewriter in question as represented under the terms of the contract (Plaintiff's Exhibit One) was due to an act or omission on the part of International Business Machines Corporation or William J. O'Shea?"

The jury answered: "William J. O'Shea".

Only the following portion of the contract between the parties dealt with installation:

"Purchaser will make available a suitable place of installation with all facilities as specified by IBM and furnish all labor required for all unpacking and placing equipment in the desired location. Equipment purchased under this agreement will be installed by IBM. The date, (Monday through Friday) following that on which IBM determines that the equipment has been installed shall be considered the date of installation of such equipment for all purposes of this agreement. IBM will notify purchaser when the equipment has been installed."

The contract further provided that payment would be due 30 days from the date of contract.

Although apparently not required to do so by the terms of the contract, it is undisputed that O'Shea did call IBM within a day or two after delivery on August 29, 1974, and asked that his typewriter be installed. In response to Special Issue No. 2 as to whether O'Shea notified IBM within a reasonable period of time after delivery of the typewriter that the typewriter had not been installed, the jury in effect found that O'Shea had so notified IBM. Further, IBM obviously not only knew of the typewriter's delivery to O'Shea, but proceeded as though it had been installed by sending O'Shea a past due notice on September 30, 1974; a solicitation for extension of expiring warranty on October 24, 1974; a second past due notice on October 3, 1974; another notice about the expiring warranty on November 20, 1974; a standard form collection letter on November 22, 1974; and a letter dated December 10, 1974, giving notice of legal action if payments were not made by return mail. The record further shows that it was not until April 10, 1975, seven (7) months after the typewriter should have been installed, that IBM for the first time offered to make arrangements for the installation. O'Shea contends that this was a conditioned offer not imposed by any terms of the contract.

We have carefully examined each of IBM's exhibits tendered to show its constant contact with O'Shea concerning his

account with it. These notices and letters are concerning demands for payment and warranties and not offers to install the typewriter. It is not clear to us how IBM regards such exhibits as evidence of its willingness to comply with the installation terms of the contract when all the while it erroneously considered that the machine had already been installed. Prior to the latter part of November 1974, IBM was accusing O'Shea only of not paying his account. Any act or omission on O'Shea's part would have come subsequent to this date. We must now consider whether evidence adduced was factually sufficient to sustain the jury's findings.

The evidence is undisputed that the typewriter was never installed by IBM and was returned to IBM by O'Shea on October 28, 1976. Although the time for installation was not stated, the court will imply a reasonable time. *Pace Corporation v. Jackson*, Tex.Civ.App., 275 S.W.2d 849, affd. 155 Tex. 179, 284 S.W.2d 340 (1955).

■ As a general rule, performance is excused when a party to a contract prevents the other party from performing. *Miller v. Hodges*, 260 S.W. 168, 172 (Tex. Comm. of App., 1924, jdgt. adopted)

The only acts that could be construed as constituting evidence that O'Shea prevented IBM from installing the typewriter would be O'Shea's failure to call and advise IBM that his typewriter had never been installed *after he received various demands for payment and letters about a warranty.* Was O'Shea legally obligated to call IBM after receiving such correspondence? We think he was not. The evidence submitted by IBM on this point tended, at best, to show bad faith on O'Shea's part in not making further calls to IBM concerning its failure to make the installation. However, in view of the hard feelings that arose between the parties when O'Shea initially called IBM, it is evident that neither party was willing to alter its position in an attempt to resolve the stalemate. It is questionable that this constituted such bad faith on O'Shea's part as would prevent IBM's installation of the typewriter. Supportive

of our view is the case of *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898), wherein Justice Denman, in determining the evidence legally insufficient to support a jury finding said:

"From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being "any evidence"; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not "reasonably infer the existence of the alleged fact," and "that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more."

■ Applying the legal sufficiency of evidence on appeal test to the case before us, that is, crediting IBM with all evidence favorable to it and disregarding all evidence that is adverse to it, we determine that the testimony falls short of the probative force necessary to support the jury's finding for IBM.

In his point of error no. 3, O'Shea contends that the trial court erred in refusing to submit his requested issues and instruction inquiring (i) whether IBM expressly warranted that the electric typewriter would be installed; (ii) if so, whether the express warranty was breached by IBM, and (iii) if so, whether the breach was a producing cause of damage to him since there was sufficient evidence to support submission of these issues and affirmative findings would have entitled O'Shea to re-

cover under the Deceptive Trade Practices Act.

IBM argues that the contractual provision regarding installation of the typewriter cannot be a breach of warranty under the DTPA (Texas Deceptive Trade Practices-Consumer Protection Act) because of the definition in Section 2.313 Tex.Bus. & Comm.Code, V.A.T.S.:

> (a) Express warranties by the seller are created as follows:
>
> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

The DTPA does not contain a definition of warranty, therefore we must look to the definition in Section 2.313 which encompasses promises similar to the one in the contract in question. It is a "promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . .". In *MacDonald v. Mobley*, 555 S.W.2d 916 (Tex.Civ.App.-Austin 1977, writ ref'd n.r.e.), the court held that an express warranty was created when the appellants represented to appellees that they would repair defects in the house bought.

■ In the case before our court, the agreement was to install a typewriter, which IBM promised to do. O'Shea's requested issues were supported by his pleadings and evidence adduced at the trial. IBM contends that failure to submit the requested issues, if error, was harmless in view of the jury's answer to special issue no. 1. Having held that the jury finding on special issue no. 1 is not supported by legally sufficient evidence, we overrule this point.

By his point of error no. 4, O'Shea complains that the trial court erred in refusing to submit his requested issues inquiring whether the filing of this suit in Dallas County constituted either (i) a deceptive trade practice or (ii) an unconscionable act on the part of IBM, and if so, whether such action was a producing cause of any damage to him, since there was sufficient evidence to support submission of these issues and affirmative findings would have entitled O'Shea to recover under the Deceptive Trade Practices Act.

■ O'Shea argues that based on Section 17.46(b)(21) DPTA, V.A.T.S., the trial court erred in not submitting his special issue relating thereto and that IBM's act of filing this suit in Dallas County was a deceptive trade practice or an unconscionable act. It is not necessary for this court to pass upon the merit of this contention since the record shows that IBM filed its original petition in Dallas County, Texas, on September 8, 1975, and that O'Shea's first amended counterclaim complaining of the venue matter was filed on November 28, 1977, after the effective date of Section 17.46(b)(21), which was on August 29, 1977. Hence any provisions contained therein would not be applicable to O'Shea's cause of action. We overrule this point of error.

Points of error no. 5 and 6, are germane and present the questions of whether the trial court erred in submitting an issue to the jury inquiring whether O'Shea's counterclaim was groundless and brought in bad faith or for the purpose of harassment, and whether the court erred in awarding attorney's fees to IBM under Section 17.50(c), Tex.Bus. & Comm.Code, V.A.T.S. which reads:

> (c) On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment, the court may award to the defendant reasonable attorneys' fees in relation to the amount of work expended, and court costs.

The jury found that O'Shea's counterclaim against IBM was groundless and brought in bad faith or for the purpose of harassment and the court awarded IBM attorney's fees for the defense of it. Our court must now decide whether it was error to send this issue to the jury.

A law review article dealing with this point says, with very little discussion, that undoubtedly this is not an issue for the jury. A well written article by William Dean Leikam, *Woods v. Littleton*; Consumerism Comes of Age, 18 South Texas Law Journal 477 (1977), states the following:

The test that Section (c) provides is a two-pronged one: the action must be groundless and brought in bad faith, or, the action must be groundless and brought for the purpose of harassment. Section (c) further states that "on a finding by the court" that the action was groundless, the court can award to defendant reasonable attorney's fees. It would appear from the wording of the article, at least from a defense standpoint, that this is a finding that must be made by the court, perhaps on motion by the attorney, but it is not an affirmative defense and does not have to be plead and proved as such. It most certainly is not an issue for the jury. From the plaintiff's standpoint the opposite stance would be true. It would be especially desirable from the plaintiff's view, if the case has any merit at all, to magnify the great prejudicial effect produced by a large corporate defendant attempting to prove up attorney's fees against an individual, preferably low income, consumer, who has dared to assert his rights to obtain justice.

■ IBM points out that the Texas Supreme Court and the Courts of Civil Appeals have continuously held that it is the province of the jury to determine questions of fact. But to empower or authorize a jury to find that an action under Section 17.50(c) of the subject Act is groundless and brought in bad faith or for the purpose of harassment, is to assume that the jury is legally qualified to make such a finding. We find no such legislative intent from the wording of Section (c) of the Act. We interpret the wording "On a finding by the court that the action under this section was groundless . . . .", to mean that the court must make such findings based on undisputed fact issues, law issues or jury findings. If the

evidence fails to raise jury issues on which a judgment for counterclaimant O'Shea could be properly awarded, the suit would be "groundless" as a matter of law. However, whether the suit is brought in "bad faith" or "for the purpose of harassment" would in the usual case present a jury issue. The wording of the Act to the effect that ". . . the court may award to the defendant reasonable attorney's fees in relation to the amount of work expended, and court costs", apparently posed no question that the court therein meant the "court" and IBM requested no special issue on this point. We hold that the trial court committed error in submitting this issue to the jury as it did and that the award of attorney's fees to IBM based upon the jury's finding was improper.

■ IBM's cross points of error no. 2 and 3 complain of the trial court's admission into evidence of certain computerized business records to prove legal work done and attorneys' fees due therefor. The evidence is void of any compliance with the requirement for the admission of such records as is set out in Art. 3737e, V.A.T.S. The predicate for the introduction of such records into evidence is set forth in detail in *Railroad Commission v. Southern Pacific*, 468 S.W.2d 125 (Tex.Civ.App.-Austin 1971, writ ref. n.r.e.). The record in our case is silent as to whether the computer equipment relied upon by O'Shea's attorney's firm was recognized as standard equipment for use in client billings; whether the records were prepared by persons who understood the operation of the equipment and whose regular duty it was to operate such equipment; and whether the permanent nature of records storage as to how daily processing of information could be fed into the computer was conducted, all of which are required by the statute and outlined in IBM's brief.

Cross points of error no. 1, 2 and 3 by IBM are sustained. The trial court committed error in admitting the computerized business records and allowing an issue thereon.

For the reasons stated the judgment of the trial court is reversed and remanded for a new trial.

COLEMAN, C. J., and PEDEN, J., sitting.