**ARBUCKLE BROADCASTERS, INC., doing business as Radio Station KKAJ, and Insurance Company of North America**

v.

**ROCKWELL INTERNATIONAL CORP., acting by and through its Collins Radio Group.**

No. CA3-77-1546-F.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 28, 1981.

Tom E. Smith, Oklahoma City, Okl. and Jim D. Lovett, Clarksville, Tex., for plaintiffs Arbuckle and Ins. Co. of North Am.

James S. Maxwell, Maxwell, Bennett, Thomas & Maxwell, Dallas, Tex., for Ins. Co. of North America.

Ernest F. Figari, Jr., Johnson, Swanson & Barbee, Dallas, Tex. and David P. Seikel, Morris, Campbell & Seikel, Houston, Tex., for Rockwell Intern.

## MEMORANDUM OPINION AND ORDER

ROBERT W. PORTER, District Judge.

Plaintiff Arbuckle Broadcasters, Inc. (Arbuckle) brought the above styled and numbered action against Defendant Rockwell International Corporation (Rockwell), alleging breach of warranties and deceptive trade practices prohibited by the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), Tex.Bus. & Com.Code § 17.41 *et seq.* Subsequently, Insurance Company of North America (INA) entered the action. In response to the claims asserted against it, Rockwell denied any liability for damages, asserted several affirmative defenses and sought recovery under the DTPA of its attorneys fees incurred in defending such claims, alleging that the latter were groundless and brought in bad faith or for the purposes of harassment.

After approximately ten weeks of trial, the jury returned a verdict, in the form of special interrogatories, in favor of Rockwell and against Arbuckle and INA. The jury further found that the claims asserted under the DTPA were groundless and brought in bad faith and awarded specific sums to Rockwell as reasonable attorneys fees for having to defend such claims. Thereafter, Arbuckle and INA separately presented several post trial motions in an effort to avoid liability to Rockwell. INA filed a (1) motion to dismiss for lack of subject matter jurisdiction, (2) motion for judgment, or alternatively, for judgment notwithstanding the verdict, (3) motion to reopen the evidence, and (4) motion for new trial. Arbuckle filed motions (1) for judgment notwithstanding the verdict and (2) for new trial. The Court has considered these motions and has carefully reviewed the entire complicated and extended proceedings in this case, and on that basis makes its rulings as will be set out below.

## I.

INA has filed a motion to dismiss, urging dismissal of the entire action, or in the alternative dismissal of the claims between INA and Rockwell, contending that the Court lacks subject matter jurisdiction over the claims between INA and Rockwell. INA argues that, since it is a Delaware corporation having its principal place of business in Pennsylvania and Rockwell is also a Delaware corporation having its principal place of business in Pennsylvania, the requisite diversity of citizenship is lacking.

The general rule under the statute relevant here, 28 U.S.C. § 1332, is that "diversity jurisdiction does not exist unless each defendant is a citizen of a different state from each plaintiff." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). It is undisputed that there is no diversity of citizenship between INA and Rockwell, and INA reads *Kroger* as requiring dismissal of the claims between them.

In *Kroger*, the plaintiff, a citizen of Iowa, brought suit against the defendant, a citizen of Nebraska. The defendant impleaded a third party, who admitted to being a citizen of Nebraska. The plaintiff subsequently asserted a claim against the third party. The original defendant successfully moved for summary judgment, leaving only the plaintiff and the third party as parties to the suit. During trial it was discovered that the third party defendant was not a citizen of Nebraska but of Iowa, and thus there was no diversity of citizenship. The district court denied a motion to dismiss, however, and the appellate court affirmed. The Supreme Court reversed.

It is true, as INA contends, that the Supreme Court in *Kroger* made the broad statement that diversity jurisdiction under 28 U.S.C. § 1332 does not exist unless there

is complete diversity of citizenship. Yet to take this statement as literally requiring strict diversity in all cases would completely destroy the concept of ancillary jurisdiction, a result that the Supreme Court clearly did not intend. *See Omni Development, Inc. v. Porter*, 459 F.Supp. 930, 932 (S.D.Fla.1978). The *Kroger* court was careful to point out the distinction between the case it was considering and those cases falling within the ancillary jurisdiction of the court.[1] *Kroger, supra*, 437 U.S. at 376, 98 S.Ct. at 2403.

In *Kroger* the Supreme Court reversed on the basis that the claim asserted was not an ancillary and dependent claim but a new and independent one. The plaintiff's claim against the third party defendant had been entirely separate from the plaintiff's original claim against the defendant, and the third party's liability to the plaintiff did not depend on the defendant's being liable to the plaintiff. These facts are distinguishable from those in the case *sub judice*. Here, INA could not recover unless Rockwell was liable to Arbuckle. INA's claims were far from separate and independent claims against Rockwell, but were intimately related to those asserted by Arbuckle. This is the classic case where ancillary jurisdiction should be asserted.

INA argues, nevertheless, that it is a mere subrogee in this action and that the assertion of ancillary jurisdiction is therefore inappropriate. INA contends that as a partial subrogee it was a real party in interest, and that it was not a party feasible to be joined under Rule 19 of the Federal Rules of Civil Procedure, because the lack of diversity destroys jurisdiction. In support of its contention, INA cites *Virginia Power & Electric Co. v. Westinghouse Electric Co.*, 485 F.2d 78 (4th Cir. 1973), where the court stated that:

---

1. The Court specifically noted in *Kroger* that in determining whether jurisdiction over a non-federal claim exists, the context in which the non-federal claim is asserted is crucial... And the claim here arises in a setting quite different from the kinds of non-federal claims that have been viewed as falling within the ancillary jurisdiction of the federal courts ...

*Id.*, 437 U.S. at 375–376, 98 S.Ct. at 2403. As this Court demonstrates, *infra*, INA's claims here are similar or identical to those that have in other cases been held to fall within the ancillary jurisdiction of the federal courts.

Where there is a partial subrogee, there are two real parties in interest under Rule 17. Either party may bring suit— the insurer-subrogee to the extent it has reimbursed the subrogor, or the subrogor for either the entire loss or only its un-reimbursed loss. If either the subrogor or subrogee brings suit, joinder is often appropriate upon proper motion of the *defendant.* But joinder is not appropri-ate, and certainly not required by Rule 17, for the purpose of destroying diversity jurisdiction and requiring dismissal . . . (emphasis added).

485 F.2d at 84. *See also, Dudley v. Smith,* 504 F.2d 979 (5th Cir. 1974), *rehearing en banc denied,* 507 F.2d 1280 (5th Cir. 1975).

In asserting this position, INA neglects to recognize the clear import of the manner in which it entered this action. INA was not hailed into court unwillingly by the defend-ant, who was seeking to avoid multiple lia-bilities, as was the case in both *Virginia Power & Electric Co.* and *Dudley.* Plaintiff Arbuckle did not seek to join INA here, as that would have destroyed diversity. In-stead, Arbuckle sought leave to amend its complaint to allow INA to intervene as of right. The motion for leave to amend the complaint, and the brief in support thereof, filed August 24, 1978, sought leave for INA to intervene so as to protect its interests, and the motion was filed by counsel who jointly represented both INA and Arbuckle. INA came in willingly, indeed, insistently, and its after-the-fact argument that it was joined as a real party in interest is hardly persuasive in the face of clear evidence throughout the record that it sought to intervene.

Not only is it beyond dispute that INA entered this lawsuit by way of intervention, it is clear that INA sought and was allowed to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Proce-dure. Rule 24(a)(2) allows a party to inter-vene as a matter of right

when the applicant claims an interest re-lating to the property or subject matter of the action and is so situated that the disposition of the action may as a practi-cal matter impair or impede his ability to protect that interest unless the appli-cant's interest is adequately represented by the existing parties.

■ Here, INA possessed a right of sub-rogation and sought to intervene on the basis that its interests would be prejudiced were it not allowed to pursue its claim against Rockwell in this action. This situa-tion is similar to that in *McDonald v. E. J. Lavino Co.,* 430 F.2d 1065 (5th Cir. 1970), where the court considered a motion to intervene by an insurer in an action brought by the insured against a third par-ty tortfeasor. There the court held that "[s]ince USF&G's purpose in moving to in-tervene was to protect its subrogation inter-est . . . it is clear that the proposed inter-vention was cognizable as intervention as of right under Rule 24(a)(2)." Id. at 1071. Likewise, in *Smith Petroleum Service Inc. v. Monsanto Chemical Co.,* 420 F.2d 1103 (5th Cir. 1970), the court held that, where the state worker's compensation law per-mitted subrogation of a compensation carri-er, the carrier was entitled to intervene as of right. No less than the insurers in *Mc-Donald* and *Smith,* INA here claimed an interest in the subject matter of the action, and disposition of the action may have im-peded its ability to protect that interest. It is evident that INA intervened in this ac-tion as a matter of right.

Since INA intervened as a matter of right under Rule 24(a)(2), there is no re-quirement of an independent basis of juris-diction. The Fifth Circuit made this clear in *Smith, supra,* where it stated, in reject-ing a claim that the requisite diversity was lacking, that "no jurisdictional problem ex-ists, because no independent ground of jur-isdiction need be shown to support interven-tion as a matter of right." 420 F.2d at 1113. *Accord Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52 (5th Cir. 1970); *Lenz v. Wag-ner,* 240 F.2d 666 (5th Cir. 1957); *Virginia Electric & Power Co. v. Carolina Peanut Co.,* 186 F.2d 816 (4th Cir. 1951). Although INA and Rockwell are citizens of the same state, this court has jurisdiction over the claim between them by virtue of ancillary

jurisdiction. *Kroger, supra,* 437 U.S. at 375, n. 18, 98 S.Ct. at 2403, n. 18.

As shown by the foregoing, there is no doubt that INA sought to protect its interests in asserting its claims against Rockwell by intervening as of right. Now INA seeks to protect its interests in avoiding liability by having the action dismissed for lack of diversity. INA cannot have its cake and eat it too. The motion to dismiss for lack of subject matter jurisdiction is therefore overruled.

## II.

INA has filed a motion for judgment, or alternatively for judgment notwithstanding the verdict, seeking to have the court disregard the findings of the jury against it that certain claims asserted under the DTPA were groundless and were brought in bad faith. In support of its motion, INA contends that (1) it never brought a claim against Rockwell under the DTPA; (2) in the event such a claim was asserted, it was wholly unauthorized; (3) assuming there was authority, the claim was prosecuted upon advice of counsel; (4) in any event, the claims of bad faith or groundlessness are questions for the court and should not have been presented to the jury; and (5) the evidence adduced by Rockwell as to the amount of its attorneys fees fails to support any award. The court will attempt to deal with these issues in an orderly manner.

### 1. *INA asserted a DTPA claim against Rockwell*

INA's initial contention is that it never asserted any claim against Rockwell under the Texas Deceptive Trade Practices Act and that, therefore, INA is not liable to Rockwell for attorneys fees under section 17.50(c). INA claims that its interest in the lawsuit was expressly limited to the actual amounts it paid its insured. Although INA has attempted to characterize its position as that of a mere subrogee, and thus shift the blame to Arbuckle, the obvious facts dictate a different conclusion.

Prior to the initiation of this suit, INA, Arbuckle, and Arbuckle's counsel, Mr. Tom Smith, entered into an agreement that provided that INA would share in any recovery of damages, "regardless of what said damages are recovered for." Defendant's Exhibit 136. Thus, INA was to have an interest in any amounts recovered by Arbuckle, regardless of whether that recovery related to the casualty losses that INA had paid and to which INA was purportedly subrogated. If any of the claims that Arbuckle asserted against Rockwell had been successful, INA would have shared in the recovery.

Subsequently, INA intervened in the case, and the pleadings on file are even more revealing as to INA's true interest in the suit. The Third Amended Complaint, upon which the case went to trial, states:

Plaintiff, "Arbuckle" herein, and Insurance Company of North America, "INA" herein, as partial subrogee and real party in interest, complain of the Defendant Rockwell International Corporation, "Rockwell" herein, acting by and through its Collins Radio Group, as follows...

2. *Violation of the Texas Deceptive Trade Practices Act.*

Rockwell's failure, after written notice, to cause the system it furnished to and installed for Arbuckle to conform to the standards of the industry and the standards of the express and implied warranties and representations which have been continuously and repeatedly made by Rockwell from the dates of the sales, deliveries and installations of the system components to the present day, are in violation of section 17.50(a) of the Texas Consumer Protection and Deceptive Trade Practices Act ..., which states that a consumer may maintain an action if he is adversely affected by "(2) a failure by any person to comply with an express or implied warranty". Rockwell has also violated Sections 17.46 and 17.-50(a)(1) of the Act ... which acts entitle Arbuckle to recover ... three times the damage resulting...

(Third Amended Complaint, p. 1, 3–4).

Significantly, there is no indication that this claim was asserted other than jointly by INA and Arbuckle. Moreover, the next

paragraph, entitled Subrogation of INA, upon which INA so strenuously relies to avoid liability, asserts that

> INA has paid Arbuckle for the various losses caused by Rockwell's breach of express and implied warranties and defective design, manufacture and installation of the equipment in the amount of approximately $126,982.59. By so paying Arbuckle under its contracts of insurance, INA has become subrogated to Arbuckle to the extent of its payments and is entitled to recover that amount out of Arbuckle's recovery from Rockwell in this proceeding.

*Id.* at 4. The source of the recovery in which INA was to be entitled to share was not limited in the pleading to any particular claim. Too, the entire pleading concludes by seeking a tripling of damages under the DTPA. Included specifically in the amounts to be trebled were all fire, casualty, and property losses paid by INA to Arbuckle. The only way these claims could be trebled was by a recovery under the DTPA, and the conclusion is compelled that INA's claims were asserted under the DTPA.

This conclusion is further supported by the fact that in the prayer for relief in the Third Amended Complaint, INA sought a separate judgment for attorneys fees. This request could have no possible basis except under the DTPA. Although INA suggests that it could just as well have been seeking attorneys fees under Article 2226, Tex.Rev. Civ.Stats., what INA ignores is that there was no privity of contract between INA and Rockwell, and INA never mentioned Article 2226 prior to the instant motion and certainly never pleaded nor proved any of the reconditions to recovery specified in Article 2226. Therefore, Article 2226 was clearly unavailable to INA to support an award of attorneys fees.

The agreement entered into among INA, Arbuckle and their counsel Mr. Smith, the pleadings on file, and the admission of INA's counsel at trial[2] all point to the fact that INA asserted DTPA claims against Rockwell. That this is clearly so is not obviated by the fact that Mr. Smith has submitted an affidavit in which he asserts that "at no time did I intentionally initiate or prosecute an action under the Deceptive Trade Practices Act in behalf of Insurance Company of North America." (Smith Affidavit, p. 1–2). The rule is well settled that "an attorney may not wait to contradict a record until it is in the interest of himself and his client to do so." *E. F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 391 (S.D.Tex. 1969).

### 2. *The DTPA Claims Asserted by INA Were Authorized*

INA next contends that while the attorneys who represented it in this action may have been authorized to seek recovery of INA's subrogated interest, they were not authorized to pursue an action on behalf of INA against Rockwell under the DTPA. Thus, INA claims it is shielded from liability for Rockwell's attorneys fees.

The general rule in Texas is that an attorney is presumed to have authority to appear and act on behalf of his client unless it is shown conclusively that the attorney was not authorized. *Hidalgo County Drainage Dist. v. Magnolia Petroleum Co.,* 47 S.W.2d 875, 876 (Tex.Civ.App.—San Antonio 1932, writ ref'd). In the instant case, INA's argument that its attorney did not have authority to assert DTPA claims is frivolous. The Third Amended Complaint and the Second Amended Answer, the

---

**2.** It need hardly be noted that Rule 15(b), Fed. R.Civ.P., provides:

> AMENDMENTS TO CONFORM TO THE EVIDENCE. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. Such amendment of the pleadings as may be necessary to cause them to con-

> form to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues.

Thus, the characterization of Plaintiffs' counsel regarding the nature of the claims and by whom they were brought is binding on INA.

pleadings upon which this case went to trial, were filed many months prior to when the action was tried. Significantly, there is no contention that INA had no access to the complaint or answer; indeed, it would be highly unusual for a client with the degree of INA's sophistication to fail to obtain and carefully inspect the pleadings in a suit such as the one in which it was involved here. INA subsidized a considerable portion of the expenses involved in the suit, including many that were unrelated to a mere subrogation claim. Moreover, a representative of INA was present for portions of the trial, and he even testified that INA had authorized such claims as had been filed. And presumably INA was in close and constant contact with its attorneys throughout the long and tedious trial of the case.

The present situation is not unlike that in *O'Meara v. O'Meara*, 181 S.W.2d 891 (Tex. Civ.App.—San Antonio 1944, writ ref'd), where the plaintiff sought to set aside a portion of a judgment entered after a settlement between the parties had been reached, claiming that she had only recently become aware of certain provisions in the judgment and that her attorney had not had authority to agree to those provisions. The court noted that the plaintiff had appeared at the trial, she had been aware that an agreed judgment was to be entered, and that she knew no more at the time she sought her bill of review than she had known when the judgment was entered. It was clear that the Plaintiff could have learned of the objectionable provisions but had not taken the trouble to acquaint herself with them. Under those circumstances, the Court held that "the lawyer will be presumed to have had the authority to agree to the judgment." *Id.*, at 895. The same can be said for INA. INA has not shown conclusively that its attorneys did not have the authority to act in its behalf in asserting DTPA claims against Rockwell.

■ Once it is shown that an attorney has authority to act on behalf of his client, "the principal is ordinarily liable for injuries proximately caused to third parties by the wanton or malicious acts of his agent, committed within the scope of his employ-

ment." *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 225 (1942). An exception to this rule has been recognized only for exemplary or unforeseeable damages, or where the act of the agent is "so outrageous" as to be outside the scope of his employment. *Id.*; *Chancey v. Wilson*, 378 S.W.2d 395 (Tex.Civ.App.—Amarillo 1964, no writ); *Magnolia Petroleum Co. v. Guffey*, 129 Tex. 293, 102 S.W.2d 408 (1937).

■ Neither of those situations exists here. The amounts sought by Rockwell for attorneys fees were clearly foreseen and were certainly not merely exemplary damages. Nor can the actions of INA's attorneys be characterized as outrageous. The attorneys conduct was no more outrageous than that of the attorney in *Glass v. Anderson*, 596 S.W.2d 507 (Tex.1980), where the attorney had written a letter repudiating several contracts that his client had entered into. The client claimed that he had not known of the letter and that it had been written without his knowledge or authorization. The court rejected this contention, stating that:

> [the client] does not deny that [the attorney] represented him generally in the transaction. In such a case, the attorney acts as the agent of the client under the general rules of agency . . . . Under the facts of this case, the client is bound by the acts or omissions of the attorney within the scope of the attorney's authority, express, implied or apparent, in the accomplishment of the purpose for which he was retained.

*Id.*, at 509. INA's attorneys were pursuing INA's interests in this lawsuit, and INA does not and could not claim that the attorneys did not represent it generally in the suit. INA's attorneys had apparent authority to pursue DTPA claims, and under those circumstances, INA remains liable for its agents' actions.

3. *The Questions of Groundlessness and Bad Faith or For the Purposes of Harassment are Questions of Fact for the Jury*

■ INA argues that the findings necessary to justify an award of attorneys fees

and amounts under the DTPA are matters to be decided by the trial judge, and thus that the findings of the jury in this respect should be disregarded. The relevant language of Section 17.50(c) provides:

> On a finding by the court that an action under this section was groundless and brought in bad faith or for the purposes of harassment, the court may award to the Defendant reasonable attorneys' fees in relation to the amount of work expended, and court costs.

INA's position on this issue is dependent on this literal language. In spite of this language, however, the Texas courts have determined that the questions of groundlessness and in bad faith or for the purposes of harassment are fact questions to be submitted to the jury.

That this is so was made clear in *Bray v. Curtis*, 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.), where the trial court had submitted an issue to the jury on whether the suit brought had been groundless or for the purpose of harassment. The Court of Civil Appeals implicitly upheld the submission of these issues, and went on to hold that the trial court had erred in not also submitting an issue, predicated on an affirmative finding by the jury as to groundlessness and harassment, that would have authorized the collection of attorneys fees in defense of a groundless claim.

■ The Plaintiff contends, nevertheless, that this court should disregard *Bray* and follow instead *O'Shea v. IBM*, 578 S.W.2d 844 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.). Yet INA's reliance on *O'Shea* is misplaced. While the appellate court there held that the trial court had committed error in submitting the issue of whether the buyer's counterclaim was groundless and brought in bad faith or for the purposes of harassment, the Court explicitly noted that whether the suit is brought in "bad faith" or "for the purposes of harassment" would in the usual case present questions for the jury, and that a court was to make findings as to groundlessness based on undisputed fact issues,

law issues, or jury findings. To any extent that *Bray* and *O'Shea* are contradictory and cannot be reconciled, I adopt the findings of the jury in this case and find that the claims of Arbuckle and INA were groundless and brought in bad faith and for the purposes of harassment.

### III.

■ The other grounds advanced by INA in its motion for judgment notwithstanding the verdict merit little mention. INA's contention that any claims asserted by it under the DTPA were asserted on the advice of counsel is to no avail. INA waived any advice of counsel defense by its failure to plead or prove such defense at trial. INA also claims that Rockwell failed to adduce evidence as to the amounts specified by the jury to be awarded Rockwell as attorneys fees and that no effort was made to allocate the time between those causes of action for which attorneys fees may be awarded and those for which they may not. The simple answer to these contentions is that Plaintiffs waived these objections to the court's charge by failing to object to the issues submitted as provided for in Rule 51 of the Federal Rules of Civil Procedure, and further waived their objections to the sufficiency of evidence by failing to properly make the objections in their motion for directed verdict. Moreover, the Plaintiffs superimposed the DTPA over their breach of warranty claims in order to gain the trebling effect of the DTPA, and thus all claims, whether for breach of warranty or for deceptive trade practices were asserted under the DTPA for purposes of Section 17.50(c). Therefore, no allocation of time was required.

It is clear from all the foregoing that INA has failed to make the requisite showing on its motion for judgment, or alternatively, for judgment notwithstanding the verdict. Therefore, its motion for judgment, or for judgment notwithstanding the verdict must be, and is, overruled.

### IV.

This leaves the court with INA's motion to reopen the evidence, and for a new trial,

and Arbuckle's motion for judgment notwithstanding the verdict and for a new trial. Many of the issues raised in these motions have already been addressed by the Court, and to the extent they have not, they warrant little exposition. Suffice it to say that the Court finds all the post-trial motions filed by Plaintiffs in this case to be without merit, and to the extent that the Court has not already made it clear, all these motions should be overruled.

It is therefore ORDERED that INA's motion to dismiss for want of jurisdiction, motion for judgment, or alternatively for judgment notwithstanding the verdict, motion to reopen the evidence, and motion for new trial be and hereby are in all things denied.

It is further ORDERED that Arbuckle's motion for judgment notwithstanding the verdict and motion for a new trial be and hereby are in all things denied.

Judgment shall be entered in accordance with this opinion.