Daniel MOLINAR, Appellant,

v.

PLAINS INSURANCE COMPANY and Albert Brann, Appellees.

No. 07–82–0042–CV.

Court of Appeals of Texas, Amarillo.

Oct. 21, 1983.

Frank L. King, Mark Smith & Associates, Lubbock, for appellant.

Donald M. Hunt, Carr, Evans, Fouts & Hunt, Cecil Kuhne, Crenshaw, Dupree & Milam, Lubbock, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Daniel Molinar seeks reversal of a judgment decreeing his liability for attorney's fees on counterclaims to his alleged, but later voluntarily nonsuited cause of action under the Deceptive Trade Practices-Consumer Protection Act (DTPA),[1] one of his nonsuited causes of action founded on a breach of contract action and containing an action for violation of the Texas Insurance Code.[2]  In essence, Molinar contends, first, that the trial court erred in overruling his pre-nonsuit motions (1) to strike late-filed amended answers and the counterclaims and (2) for a continuance, and, second, that the judgment is not based upon sufficient evidence.  Concluding that Molinar is not in a position to raise the first contention and that the judgment is supported by sufficient evidence, we affirm.

Molinar, who was afforded personal injury protection under a Texas family automobile insurance policy issued by Plains Insurance Company, was injured on 12 December 1977 in an automobile accident.  Three days later, Molinar assigned to his chiropractor, Dr. Robert C. Knight, his right to recover

1. The Deceptive Trade Practices-Consumer Protection Act, originally enacted effective 21 May 1973 and amended in 1977 and in 1979, is a part of the Texas Business and Commerce Code, section 17.41 *et seq.* (Vernon Supp.1982–1983), and customarily called the DTPA.

2. Tex.Ins.Code Ann. (Vernon 1981).

any damages resulting from the accident to the extent of, but not to exceed, the amount of his bill for chiropractic services.

Following the resolution of a question of coverage, Plains Insurance Company paid to or on behalf of Molinar the claims submitted to it, including the interim bill of Dr. Knight. Thereafter and upon Molinar's examination by a physician selected by the insurance company as permitted under the insurance policy, the company issued its 4 May 1979 check in the amount of $724.50 made payable to the order of "Dr. Robert C. Knight and Daniel F. Molinar." The check apparently was not received by Molinar.

On 11 July 1979, without making a further request for payment of the $724.50 and notwithstanding his assignment to Dr. Knight, Molinar instituted the causes of action culminating in his appeal. Molinar's causes of action were predicated on the insurance company's breach of the insurance contract in failing to pay the $724.50 he incurred for treatment by Dr. Knight. He alleged that the company's course of conduct in refusing to pay the claim violated, and subjected the company to the penalty provisions of, both the Insurance Code and the DTPA. He further alleged that Albert Brann, an independent insurance adjuster assigned to investigate the insurance coverage for Molinar's accident and injuries, materially misrepresented, in the scope of his authority as agent for the insurance company, the coverage of, and the entitlement to benefits under, the policy in violation of the DTPA. Molinar then pleaded

that in addition to his recovery of the $724.50, he was entitled to recover, among other damages, treble damages provided by the DTPA. Both the insurance company and Brann answered with a general denial.

While the causes of action alleged were pending on 7 December 1979, Molinar's attorney of record requested that the $724.50 check be reissued. Later that month, the insurance company reissued the check.

Subsequently on 24 November 1980 and with the reissued check in his attorney's file, Molinar filed his first amended original petition. Pleading the same matters contained in his original petition, Molinar recast his pleadings to make it clear that he was seeking, among other damages, treble damages provided by the DTPA for its alleged violations by the insurance company in continuing to refuse to pay the $724.50 bill for his treatment by Dr. Knight.

Molinar's causes of action were set for a jury trial on 31 August 1981. On the preceding 27th and 28th, the insurance company and Brann respectively filed a first amended answer and counterclaim. Each answer consisted of a general denial, special exceptions and affirmative defenses; each counterclaim asked for reasonable attorney's fees allowed by the DTPA on the premise that Molinar's alleged DTPA cause of action is groundless and brought in bad faith and for the purpose of harassment.[3]

Molinar moved the court to strike the amended answers and counterclaims, alleging that they were not timely filed pursuant to Rule 63[4] with leave of court, that he

---

**3.** At the time Molinar's alleged DTPA cause of action arose and he initiated the litigation; the original section 17.50(c) of the DTPA provided that:

> On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment, the court may award to the defendant reasonable attorneys' fees in relation to the amount of work expended, and court costs.

Deceptive Trade Practices-Consumer Protection Act, ch. 143, § 17.50(c), 1973 Tex.Gen. Laws 322, 326–27, *amended by* Act of June 13, 1979, ch. 603, § 4, 1979 Tex.Gen.Laws 1327, 1329–30. With the 1979 amendment, effective 27 August 1979 and at the time Molinar's first

amended petition and the counterclaims thereto were filed, section 17.50(c) now provides that:

> On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

Tex.Bus. & Com.Code Ann. § 17.50(c) (Vernon Supp.1982–1983).

**4.** Rule 63 of the Texas Rules of Civil Procedure provides, in part and as material here, that "any amendment offered for filing within seven days of the date of trial or thereafter ... shall be filed only after leave of the judge is obtain-

was surprised, and that he did not have adequate time to prepare a proper response to them. On trial day, the court overruled the motion. Molinar then orally moved for a continuance, which the court offered; but, when the court indicated that, because of prior jury trial settings, the case might not be reached for six months, Molinar declined the continuance and elected to proceed to trial.

When, during the presentation of Molinar's evidence to the jury, it developed that he had assigned to Dr. Knight his right to recover the $724.50 upon which his causes of action were based, Molinar voluntarily took a nonsuit. The nonsuit was granted without prejudice to the right of the insurance company and Brann to press their counterclaims at a later date.

After a 6 November 1981 bench trial, the court rendered judgment on the counterclaims. Reciting in the judgment its finding that Molinar's alleged cause of action was groundless, brought in bad faith, and brought for the purpose of harassment, the court decreed that the insurance company and Brann recover from Molinar the respective sums of $3,458.14 and $2,506.25 as reasonable and necessary attorney's fees.

At Molinar's request, the court made and filed findings of fact and conclusions of law in support of its judgment. In addition to reiterating the factual finding contained in the judgment, the court found that Molinar had assigned to Dr. Knight all of his claims upon which his suit was based and had no standing to bring the suit, and that the reasonable and necessary attorney's fees were the amounts awarded, particularly in relation to the work expended.

■ Molinar is not in a position to charge, as he attempts to do with his first two points of error, that the trial court erred in overruling his motion to strike the late-filed amended answers and counterclaims and his motion for a continuance. Although his motions invoked the court's consideration of all matters relevant to an

appropriate exercise of its discretion in granting or denying the motion to strike, *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex. 1980), and the motion for a continuance, *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex.1963), we do not reach the questions whether the court abused its discretion in overruling the motion to strike and in offering a continuance which might postpone the trial for six months.

■ Any question concerning the propriety of the court's rulings relating to Molinar's pleaded causes of action and the defenses interposed thereto was effectively mooted when, subsequent to the court's rulings, Molinar voluntarily took a nonsuit upon the revelation that he had assigned to a nonlitigant the right of recovery upon which he had based his alleged causes of action. The nonsuit effected a termination of those matters without an adjudication of their merits and, as to them, returned the litigants to the positions they occupied before Molinar invoked the court's jurisdiction. *Crofts v. Court of Civil Appeals,* 362 S.W.2d 101, 104 (Tex.1962). Thus, the court's rulings on the interlocutory matters, being dependent upon the vitality of Molinar's pleaded causes of action, were nullified by his nonsuit, *International Ass'n of Machinists v. Federated Ass'n of Accessory Workers,* 133 Tex. 624, 130 S.W.2d 282, 283 (1939), and it becomes academic whether there was any error in the court's pre-nonsuit rulings on these matters.

■ However, the nonsuit was limited to Molinar's pleaded causes of action and the asserted defenses, *Hoodless v. Winter,* 80 Tex. 638, 16 S.W. 427, 428 (1891), and it did not affect the right of the insurance company and Brann to be heard on their pending counterclaims for affirmative relief. Tex.R.Civ.Pro. 164. *Accord, Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 683 (1956). When the court reached the counterclaims for a bench trial more than two months after he took the nonsuit, Molinar announced ready without voicing any objection, especially those he now attempts to

ed, which leave shall be granted by the judge unless there is a showing that such amendment

will operate as a surprise to the opposite party."

express here. Hence, he waived any complaint to the court's prior rulings on his pre-nonsuit motions directed to the counterclaims. *See PGP Gas Products, Inc. v. Fariss,* 620 S.W.2d 559 (Tex.1981). Points of error one and two are overruled.

■ Molinar drafted his third point to attack both the legal and the factual sufficiency of the evidential base for the judgment, and he cast his fourth point to attack the factual sufficiency of the evidence to support the award of attorney's fees. Notwithstanding the wording of his points, Molinar's combined argument under them is limited to assertions, made with only a reference to an entire volume of the statement of facts, that there is no evidence to support the finding that his action was groundless and brought in bad faith or for the purpose of harassment and, therefore, there is no support for a judgment against him for attorney's fees. It is at once obvious that the briefing requirements of Rule 418, Texas Rules of Civil Procedure, are not met by this presentation, which subjects Molinar to a waiver of the consideration of the points of error, *Saldana v. Garcia,* 155 Tex. 242, 285 S.W.2d 197, 200–01 (1955); yet, following the teaching of *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112, 114 (Tex.1976), we have endeavored to ascertain the meaning of the evidential complaints.

■ The points are amplified only by Molinar's statements that no evidence was presented which shows and supports the court's finding just recited. Giving Molinar's presentation the liberal construction accorded, he has raised only "no evidence" points. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). Consequently, in deciding the points, we must consider only the evidence and the inferences tending to support the finding attacked and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1956).

■ There is in the record undisputed evidence that before he initiated the litigation, Molinar had assigned any right he had to recover on the $724.50 claim upon which he founded his causes of action. Naturally,

he is chargeable with his own actions, and the court found that because of his assignment, Molinar had no standing to bring the suit. The evidential support for that finding has not been challenged and, therefore, it is conclusive. *Adams v. American Quarter Horse Ass'n,* 583 S.W.2d 828, 833 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Moreover, there is undisputed evidence that the insurance company's check in full payment of the $724.50 claim was in the possession of Molinar's attorney for almost a year before he filed his amended petition alleging the failure to pay the claim and for more than twenty months before he persisted in prosecuting his pleaded actions before a jury. Even though Molinar acted in part through his attorney, he is responsible for his attorney's acts. *Arbuckle Broadcasters v. Rockwell Intern. Corp.,* 513 F.Supp. 412, 418–19 (N.D.Tex.1981). Beyond that, the record is devoid of any evidence that Molinar relied or acted on any post-claim representation by Brann or course of conduct by or on behalf of the insurance company to his actual damage or injury so as to raise an issue of a DTPA violation in this regard. *See Royal Globe Ins. Co. v. Bar Consultants,* 577 S.W.2d 688 (Tex.1979). We conclude, then, that this evidence alone has sufficient probative force to support the court's finding that Molinar's alleged DTPA cause of action was groundless, brought in bad faith, and brought for the purpose of harassment.

■ As noted, Molinar's no evidence attack on the award of attorney's fees is predicated solely on the premise that there is no evidence to support the finding we have just upheld on evidence of probative force. The upholding of the finding destroys the predicate and, with it, the point, particularly since Molinar's failure to challenge the evidential support for the court's findings of the reasonableness and necessity of the amounts of attorney's fees awarded makes the findings conclusive. *Adams v. American Quarter Horse Ass'n, supra.* Still, we have observed from the record that attorneys, whose qualifications were not contested, furnished the court with testimony and exhibits—covering dates, hours, items and amounts—justifying the necessi-

ty and reasonableness of the attorney's fees awarded.

We, therefore, overrule Molinar's last two "no evidence" points of error. If the question of the factual insufficiency of the evidence were presented to us by these points, we still would overrule the points, holding under the *Garza v. Alviar, supra,* standard of review that the evidence supporting the court's findings is not so weak and the evidence to the contrary is not so overwhelming that the findings should be set aside.

The judgment is affirmed.