howard v. casey 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-091-CV





BRENT HOWARD,



 APPELLANT


vs.





MICHAEL E. CASEY,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NO. 91-6574, HONORABLE JERRY A. DELLANA, JUDGE PRESIDING 



 




 This is an appeal from a personal injury action arising out of an automobile
accident in which appellant Brent Howard was a passenger in a vehicle operated by appellee
Michael Casey. On appeal, Howard argues the trial court abused its discretion by denying his
motion for new trial because the jury's failure to award damages in the case was against the great
weight and preponderance of the evidence. We will affirm the trial court's judgment.



FACTS


 On November 5, 1989, at approximately 1:00 a.m., Howard, Casey and another
person were traveling along the outskirts of Ruidoso, New Mexico. Casey was driving, with
Howard and the other person as passengers. Casey lost control of the car and, in an effort to
regain control, drove into a ravine. No one reported serious injuries at the scene; however, the
next day Howard went to the Texas Tech University Health Services Center in Lubbock
complaining of back pain. Howard subsequently was sent to Lubbock General Hospital, where
he was admitted and stayed for approximately five days. The doctors diagnosed Howard with a
fracture of the second vertebral body of the lumbar spine.

 Howard filed suit against Casey to recover damages for his personal injuries. At
trial the jury found that Casey was negligent, and the trial court rendered judgment based on the
jury's verdict. The jury found damages as follows:



Reasonable and necessary medical expenses incurred in the past: $ 5,613.95


Reasonable and necessary medical expenses which in reasonable medical
probability will be incurred in the future: $ 882.00


Conscious physical pain and mental anguish in the past: $ 4,050.00


Conscious physical pain and mental anguish which will probably occur in the
future: $ 0


Loss of earning capacity: $ 0


Physical impairment: $ 0



 Howard filed a motion for new trial, alleging that the jury's failure to award
damages for future physical pain and mental anguish and for impairment was against the great
weight and preponderance of the evidence in the case. The trial court overruled the motion, and
Howard appealed.



STANDARD OF REVIEW


 A trial court has broad discretion in ruling on a motion for new trial, and its
decision will not be disturbed on appeal absent a clear abuse of discretion. Strackbein v. Prewitt,
671 S.W.2d 37, 38 (Tex. 1984); Hicks v. Ricardo, 834 S.W.2d 587, 590 (Tex. App.--Houston [1st
Dist.] 1992, no writ). In reviewing a factual sufficiency challenge, an appellate court must
consider and weigh all of the evidence presented in the case, and should set aside the verdict only
if the jury finding is so against the great weight and preponderance of the evidence as to be
manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Hicks, 834 S.W.2d at 590;
Marshall v. Superior Heat Treating Co., 826 S.W.2d 197, 199 (Tex. App.--Fort Worth 1992, no
writ). The appellate court may reverse and remand the case when the jury's findings are against
the great weight and preponderance of the evidence. Balandran v. Furr's, Inc., 833 S.W.2d 648,
650 (Tex. App.--El Paso 1992, no writ).



DISCUSSION


 In two points of error, Howard contends the jury's failure to award damages for
future conscious physical pain and mental anguish and for impairment was so against the great
weight and preponderance of the evidence as to be manifestly unjust. Howard argues that by
awarding damages for future medical expenses ($882), the jury implicitly found that Howard
would suffer from future pain and mental anguish. (1) He further argues that the undisputed
testimony and other evidence presented at trial necessitated an award for impairment. The
evidence in the record provides the following:

 Dr. Robert King, an orthopedic surgeon consulted by Howard's parents after the
injury, testified by videotaped deposition that after consultation, he diagnosed Howard with a
"compression" fracture of the second vertebral body of the lumbar spine. Dr. King stated that
as a result of the injury, Howard was "more likely" than not to develop arthritic changes in the
injured region and more likely to continue to have some pain associated with certain physical
activities. Later, however, Dr. King clarified this statement by agreeing that everyone is at risk
of developing arthritic changes, but that Howard was simply more predisposed than others. He
further stated that in his opinion, Howard had suffered 5% to 7% permanent impairment to his
body. Dr. King defined "impairment" as a term which attempts to quantify conditions in terms
of loss of function; however, he agreed that a 5% impairment rating would not necessarily
correspond with a 5% reduction in physical activities or a 5% loss of enjoyment of life. Dr. King
agreed that Howard was completely healed by the time of trial, and testified that after reviewing
an MRI scan done on Howard in February of 1992, he was unable to find from the scan any
objective medical or clinical reason why Howard might be having discomfort in his back over two
years after the injury. Dr. King stated that based on his own tests, and on the level of discomfort
Howard had reported, he had advised Howard to take Tylenol or Advil for any pain he may incur. 
He had also prescribed certain exercises for Howard to help with discomfort. At the time of trial, 
Dr. King was not restricting Howard from pursuing any physical activities. He stated that certain
physical activities could cause Howard pain in the future, and that the activities Howard reported
as still causing him pain would probably continue to do so. Dr. King agreed that some of the
activities that Howard complained caused him pain could cause pain in a non-injured person as
well. He testified that the only reason he was of the opinion that Howard was continuing to have
pain at the time of trial was because Howard had reported having such pain, and that Dr. King
had found no objective basis for the pain. Finally, Dr. King agreed with the statement that in all
probability, there was no reason that Howard could not lead a normal and productive life,
participating in the sports in which he currently participates, and simply continuing to take Advil
and aspirin as needed. The record reflects that Howard's arm was in a cast at the time of Dr.
King's deposition as a result of an injury Howard suffered while playing volleyball. Dr. King
stated that he was treating Howard for this injury but that Howard had not mentioned any
problems regarding back pain during these visits.

 Dr. James L. Smith, another orthopedic surgeon who began treating Howard in
December of 1989, testified through written interrogatories taken on August 12, 1992. Dr. Smith
testified that in regard to his last examination of Howard on August 22, 1991, he was unable to
detect or confirm any objective, clinical, or medical reason for any back pain. He answered "yes"
when asked if it was possible Howard was complaining of back pain two and one-half years after
the accident because he was subconsciously motivated by secondary gain factors, but also stated
he had no personal opinion as to whether this was, in fact, the case. (2) Dr. Smith stated that under
the American Medical Association Guidelines to Evaluation of Permanent Impairment, Howard
had a 7% impairment of his whole person; however, Dr. Smith also testified that he felt these
guidelines were inapplicable to the instant case. (3) In a letter dated September 13, 1991, addressed
to Howard's previous attorney, Dr. Smith stated that he would not have anticipated Howard's
complaints of pain to last so long after the injury, did not expect them to be permanent, and in the
meantime had recommended limiting painful activities and taking over-the-counter anti-inflammatories such as Advil for any pain. Dr. Smith further stated in the letter that Howard was
not at a great risk for developing osteoarthritis because the fracture involved the upper lumbar
region of the spine, and most arthritic conditions occur in the lower lumbar region. When asked
about the "reasonable medical probability" of chronic pain and discomfort, Dr. Smith replied that
it was possible Howard would have mild discomfort for two years following the injury, and that
the need for future medical care for Howard was "unlikely."

 Howard testified that after being released from his initial hospitalization, he was
in a great deal of pain. Three and one-half weeks after the accident, he began resuming a
"somewhat normal lifestyle," but still wore a back brace prescribed by the doctors, and was
restricted from strenuous physical activities. Howard stated he wore his back brace full time for
four months, then wore it for another two or three months when performing any sporting activity,
and then was fully released from its use after March 19, 1990. He stated that for the first six
months after his injury, he was instructed by Dr. Smith to "moderate" his participation in physical
sporting activities; thereafter, he was instructed to resume a normal lifestyle, except that he was
to avoid heavy lifting and contact sports for the next several months. Howard testified that before
the accident he was very active: he lifted weights, played tennis, basketball and football, and
water skied. He stated that at the time of his testimony he was still having pain in his back, often
from sitting for long periods of time in a car or from physical activities. He stated he had not
been able to resume the normal lifestyle he had before the injury, but that he had attempted to do
almost everything he was able to do before the injury. Finally, Howard testified he was worried
about the activities he would be able to enjoy in the future. 

 Howard admitted that Dr. Smith had told him six months after the accident that
over the long-run he should have little trouble with his back. Howard stated the only medicine
he had been prescribed since the accident was Tylenol 3 when he left the hospital in Lubbock, but
that he had not refilled that prescription. Howard admitted he participated in volleyball and
softball during the spring of 1990; played soccer for his fraternity team; played intramural
football; water skied (some twenty times during the summer of 1991); played racquetball; played
tennis; boogie-boarded; went inner-tubing; went to Schlitterbahn (a water amusement park);
played water volleyball; and shot baskets a few times. In his opinion, however, Howard felt he
was not as competitive in some of these sports as he was before the injury. When asked about
his use of Advil or aspirin, Howard admitted he had taken none that day and had none with him
while in court that day or the previous day, but stated that he usually carries some in his car. 

 Howard's mother and his girlfriend also testified at trial. Both witnesses testified
that Howard was limited in performing certain physical activities and that sitting for prolonged
periods of time would cause Howard pain. Both witnesses supported Howard's testimony
regarding the pain he felt at the time of trial and the general decrease in his ability to function as
he did before the injury. 

 At least one Texas court of appeals has held that the fact that an injury has been
proven is not, in itself, a sufficient basis for an award of pain and suffering or physical
impairment. Blizzard v. Nationwide Mut. Fire Ins. Co., 756 S.W.2d 801, 805 (Tex. App.--Dallas
1988, no writ). The determination of damages for past and future physical pain, mental anguish,
and physical impairment are issues that are "particularly within the province of the jury." 
Marshall, 826 S.W.2d at 200; see Hicks, 834 S.W. 2d at 591; see also Balandran, 833 S.W.2d
at 648. When faced with conflicting evidence on these issues, the jury "may believe one witness
and disbelieve others" and "may resolve inconsistencies in the testimony of any witness." 
McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). Indeed, it is up to the jury "to
weigh opinion evidence and the judgment of experts. . . . [and] to decide which expert witness
should be credited." Pilkington v. Kornell, 822 S.W.2d 223, 230 (Tex. App.--Dallas 1991, writ
denied). A jury may believe all or any part of a witness' testimony, and may disregard any or all
of that testimony. Id. 

 Texas courts of appeals do not agree whether a party necessarily is entitled to
damages for future physical pain and mental anguish, when the jury finds that he will incur future
medical expenses. See Hyler v. Boyter, 823 S.W.2d 425, 427 (Tex. App.--Houston [1st Dist.]
1992, no writ); Blizzard, 756 S.W.2d at 805. The Blizzard court, in attempting to distinguish the
two lines of cases, concluded that:



The cases perhaps indicate that appellate courts are more reluctant to hold jury
findings of no damages for pain and suffering contrary to the great weight and
preponderance of the evidence when the indicia of injury and damages are more
subjective than objective. The more evidence of outward signs of pain, the less
findings of damages depend upon the claimant's own feelings and complaints, the
more likely appellate courts are to overturn jury findings of no damages for pain
and suffering.



Blizzard, 756 S.W.2d at 805 (emphasis added). Although Blizzard addressed the issue of a jury
awarding past medical expenses and refusing to award damages for past pain and suffering, we
find the same analysis applies to the instant case, wherein the jury awarded future medical
expenses while failing to award damages for future pain and mental anguish. See Hyler, 823
S.W.2d at 427. 

 In the instant case, there was conflicting evidence relating to the award of damages
for future physical pain and mental anguish. Although Howard, his mother, and his girlfriend all
testified that Howard was still having pain in his back at the time of trial, Dr. King and Dr. Smith
both testified that they had found no objective, medical reason for the continued pain. 
Furthermore, although Howard claimed that strenuous physical activities caused him discomfort,
he also testified as to his continued participation in sports and other strenuous physical activities. 


 Considering this conflicting evidence, we cannot say that the jury's failure to award
damages for future physical pain and mental anguish is so against the great weight and
preponderance of the evidence as to be manifestly unjust. The jury "is the sole judge of the
witnesses' credibility and the weight to be given their testimony." Pilkington, 822 S.W.2d at 231. 
Furthermore, under the "indicia of injury" analysis set forth in the Blizzard case, we find that the
complaints here relating to damages for future physical pain and mental anguish were subjective
in nature. Thus, our deference to the jury's findings of damages in this case is especially proper. 
Hyler, 823 S.W.2d at 427; Blizzard, 756 S.W.2d at 805. Accordingly, we overrule Howard's
first point of error.

 Howard contends in his second point of error that the jury's failure to award
damages for physical impairment was against the great weight and preponderance of the evidence. 
Howard argues that the jury was not asked to divide the issue into past and future impairment and
that evidence of the fracture, the five-day hospitalization, the requirement of wearing a back brace
for three to four months, the inability to participate in normal physical activities and the
impairment ratings to which both doctors testified, required a finding of at least some physical
impairment in the past.

 To recover damages for physical impairment, the injured party must "`sustain the
burden of proving that the effect of his physical impairment extends beyond any impediment to
his earning capacity and beyond any pain and suffering to the extent that it produces a separate
and distinct loss that is substantial and for which he should be compensated.'" Landacre v.
Armstrong Bldg. Maintenance Co., 725 S.W.2d 323, 324 (Tex. App.--Corpus Christi 1986, writ
ref'd n.r.e.) (emphasis added) (citations omitted); Allen v. Whisenhunt, 603 S.W.2d 242, 243
(Tex. Civ. App.--Houston [14th Dist.] 1980, writ dism'd) (quoting Green v. Baldree, 497 S.W.2d
342 (Tex. Civ. App.--Houston [14th Dist.] 1973, no writ)). Furthermore, a finding of damages
for physical impairment is a "subjective determination particularly in the province of the jury." 
Marshall, 826 S.W.2d at 200; Landacre, 725 S.W.2d at 325. Thus, "[t]he mere fact of injury
. . . does not prove compensable pain and suffering, and certainly not impairment and lost
earnings. . . ." Blizzard, 756 S.W.2d at 805 (emphasis added); see Landacre, 725 S.W.2d at 324;
but cf. Robinson v. Minick, 755 S.W.2d 890, 894 (Tex. App.--Houston [1st Dist.] 1988, writ
denied) (holding that undisputed, objective evidence of facial fractures, surgery, and
hospitalization required an award for past physical impairment).

 Based upon the record, we cannot say that the jury's failure to award damages for
impairment was not based upon factually sufficient evidence. Although the doctors testified
Howard had suffered a 5% to 7% impairment, Dr. Smith went on to testify that the guidelines
used to determine this rating were inapplicable to the instant case. The only other evidence
relating to impairment was subjective in nature, and the jury's finding in this regard was based
essentially on the weight and credibility it chose to give to various evidence and testimony. 
Furthermore, the jury had before it evidence of Howard's participation in numerous physical
activities since his injury, which may have contributed to its failure to find that Howard suffered
any impairment. Even if the jury believed that Howard was unable to perform certain physical
activities as well as before the injury, such a finding would not mandate an award for physical
impairment. See Landacre, 725 S.W.2d at 325; see also Platt v. Fregia, 597 S.W.2d 495 (Tex.
Civ. App.--Beaumont 1980, writ ref'd n.r.e.). 

 Howard had the burden to prove a substantial loss for which he deserved
compensation beyond that awarded for pain and suffering. Landacre, 725 S.W.2d at 324; Allen,
603 S.W.2d at 243. Based on the evidence as a whole, we cannot say that the jury's failure to
find that Howard met this burden was against the great weight and preponderance of the evidence. 
Accordingly, we overrule Howard's second point of error.

 We affirm the judgment of the trial court. 



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: November 10, 1993

Do Not Publish

1.   Although no one challenges the award of $882 for future medical expenses, our
review of the record does not reveal the basis for the jury's award of this specific amount.
2.   Dr. King previously defined the term "secondary gain" as the situation in which
people may amplify their complaints of pain "because of other tangible or perceived
tangible rewards."
3.   Dr. Smith testified that he used the AMA guidelines at the request of an attorney
who at one point was the attorney of record for Howard. While still representing
Howard, the attorney sought medical information from Dr. Smith regarding Howard's
injuries, and requested him to use the AMA guidelines in assigning an impairment rating
to Howard's condition. Dr. Smith testified that these guidelines are required by law to be
used for worker's compensation claims, and though "not really applicable in this case . . .
at her request I used it."