**Linda K. BLIZZARD, Appellant,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**
**Appellee.**

**No. 05–87–00297–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 3, 1988.

Terri J. Meador, Dallas, for appellant.

D. Bradley Dickinson, James A. Clutts, Jr., Bruce W. Bowman, Jr., Dallas, for appellee.

Before DEVANY, STEWART and HECHT, JJ.

HECHT, Justice.

Appellant Linda K. Blizzard sued her insurer, appellee Nationwide Mutual Fire Insurance Company, to recover on the uninsured motorist and personal injury protection provisions of her automobile policy, and for violations of the Texas Insurance Code and Texas Deceptive Trade Practices–

Consumer Protection Act.[1] Nationwide counterclaimed, asserting that Blizzard's DTPA claims were groundless and brought in bad faith or for purposes of harassment. After trial to a jury, the trial court rendered judgment denying all relief sought by both parties.

Blizzard and Nationwide both appeal. Blizzard complains that the jury's failure to find more damages than they did is contrary to overwhelming evidence, and that the trial court erred in refusing to award her what damages and attorney fees the jury did find. Blizzard also complains that the issues of whether she brought her DTPA claims in bad faith and for purposes of harassment were improperly submitted to the jury, and that the evidence is factually insufficient to support the jury's findings on those issues and on the amount of Nationwide's attorney fees on appeal. Nationwide complains that the trial court erred in refusing to award it the attorney fees found by the jury. We affirm the judgment of the trial court.

## I

Blizzard, a 40–year–old unmarried software engineer, claims to have been injured when the car she was driving was struck from behind by a car driven by an uninsured motorist. Nationwide has conceded that Blizzard was not at fault in the accident, that the motorist who was at fault was uninsured, and that Blizzard is covered by the uninsured motorist and personal injury protection provisions of her policy. For over a year following the accident Nationwide paid all Blizzard's medical expenses, rental car expenses, and property damage. Nationwide then offered to pay Blizzard an additional $5,000 in full settlement of her claim, but Blizzard refused the offer and filed this action.

Blizzard sued Nationwide for damages under the uninsured motorist and personal injury protection provisions of her policy. Blizzard also alleged that Nationwide had violated the DTPA and section 16(a), article 21.21, of the Texas Insurance Code by misrepresenting the terms of the policy, acting unconscionably in handling her claim, and not attempting to settle in good faith.[2] Nationwide countered by alleging that Blizzard's DTPA claims were groundless and brought in bad faith or for purposes of harassment.

The jury found that:
—$1,479 for past medical expenses would fairly and reasonably compensate Blizzard for her injuries resulting from the accident;
—Reasonable fees for legal services rendered by Blizzard's attorney would be $14,116 in the trial court;
—Blizzard's DTPA claims were brought in bad faith and for purposes of harassment; and
—Reasonable fees for legal services rendered by Nationwide's attorney would be $13,970 in the trial court, $4,000 in the court of appeals, $2,400 for application for writ of error, and $1,600 if writ of error were granted.

The jury failed to find that:
—Blizzard should be compensated for past or future physical pain and mental anguish, past loss of earnings or future loss of earning capacity, past or future physical impairment, and future medical expenses;
—Nationwide did not attempt in good faith to effectuate a prompt, fair and equitable settlement of Blizzard's claim when liability had become reasonably clear;
—Nationwide's conduct in handling Blizzard's claim was unconscionable within the meaning of the DTPA;
—Nationwide misrepresented to Blizzard the terms of its policy;
—Nationwide failed to pay Blizzard personal injury benefits to which she was entitled; and
—Any fee would be reasonable for legal services rendered by Blizzard's attorney on appeal.

1. TEX.BUS. & COMM.CODE ANN. §§ 17.41–17.-63 (Vernon Supp.1988), herein referred to as the "DTPA".

2. Blizzard pleaded numerous other claims, but these were the claims submitted to the jury.

Blizzard moved the trial court to disregard the jury's findings that her DTPA claims had been brought in bad faith and for purposes of harassment, and to conclude as a matter of law that those claims were not groundless. Blizzard also moved for a new trial on the grounds that the jury's failure to find additional damages was contrary to overwhelming evidence. The trial court rendered judgment denying Blizzard and Nationwide any relief. By motion for new trial and motion to modify judgment Nationwide urged the trial court to award it the attorney fees found by the jury. The trial court denied Nationwide's motions.

## II

### A

■ In point of error two, Blizzard complains that the jury's finding of only $1,479 damages for past medical expenses, and their failure to find additional damages, are so against the great weight and preponderance of the evidence as to be manifestly unjust.[3] To assess this complaint, we summarize the evidence pertaining to the nature and extent of injury Blizzard sustained in the accident. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Blizzard's car was struck from behind with such force that her seat broke, and she fell into the back seat. Nevertheless, she got out of the car, exchanged information with the other driver, and then went home. Blizzard testified that she did not seek medical attention until the next day, when she called a clinic to complain of soreness and discomfort in her neck. Blizzard testified that the clinic prescribed muscle relaxers and pain killers for her and recommended that she get more rest. No one from the clinic testified at trial.

Blizzard next sought medical care ten weeks later when, at the recommendation of her attorney, she went to Dr. Jewel Daughety. Dr. Daughety diagnosed Blizzard as suffering from a lumbar disc disor-

der, cervical sprain, and compression of the neurovascular bundle in her left arm, all resulting from the accident. Dr. Daughety felt it likely that Blizzard would continue to experience some discomfort and recommended that she take time off from work and undergo physical therapy and X-rays. Blizzard testified that she tried to follow Dr. Daughety's advice, returning to him from time to time over the next three years. However, Blizzard testified that since the accident she has not had a single day free of pain, restricting although not prohibiting her physical activities, and causing her occasionally to miss work. Dr. Daughety testified that Blizzard's reports of pain were consistent with his tests on her, and that she would continue to suffer in the future, probably requiring additional medical treatment and possibly surgery for her injuries, costing thousands of dollars.

Nationwide referred Blizzard to Dr. Robert E. Callewart. Dr. Callewart testified that he would have treated Blizzard with anti-inflammatory drugs, muscle relaxers and physical therapy for a short time after the accident, for a total medical expense of $500–600. Dr. Callewart testified that Blizzard fully recovered from the accident within a few weeks and would probably never require hospitalization or surgery or miss work. Dr. Callewart believed Blizzard's lingering complaints to be the result of a degenerative or congenital condition in her back.

Numerous cases have concluded that once the fact of injury is either established by the evidence or acknowledged by the jury by a finding of some resulting damages, the jury's failure to award damages for pain and suffering will be regarded as against the great weight and preponderance of the evidence. Illustrative, but certainly not exhaustive, of such cases are the following, and the cases they in turn cite: *Alarcon v. Circe,* 704 S.W.2d 520, 521 (Tex. App.—Corpus Christi 1986, no writ) (inconsistent for jury to find damages for past

---

**3.** In point of error one, Blizzard complains that there is no evidence to support the jury's finding of only $1,479 damages for past medical expenses, and their failure to find additional damages. At oral argument Blizzard's counsel conceded that this point is without merit and withdrew it.

medical care and lost wages and not for pain and suffering); *Martin v. Warren & Miller Co.*, 639 S.W.2d 706 (Tex.App.—Tyler 1982, no writ) (once injury shown and liability fixed, jury's failure to find damages for pain and suffering must be reversed); *Sansom v. Pizza Hut of East Texas, Inc.*, 617 S.W.2d 288, 292–93 (Tex. Civ.App.—Tyler 1981, no writ) (jury could not find reasonable expenses resulting from injury and fail to find damages for pain and suffering).

Contrasted with such cases are a good many others which uphold jury findings of no damages for pain and suffering despite other findings and evidence of injury and some resulting damages. Again, solely by way of illustration, we refer to the following cases and others cited by them: *McGuffin v. Terrell*, 732 S.W.2d 425, 427–28 (Tex.App.—Fort Worth 1987, no writ) (jury may find no damages for pain and suffering despite finding other damages resulting from injury if the damages found are minimal and the complaint of injury is subjective); *Craig v. Allen*, 556 S.W.2d 644, 647 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.) (failure to find damages for pain and suffering was not against the great weight and preponderance of the evidence); *Hulsey v. Drake*, 457 S.W.2d 453, 460 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.) (finding of no damages for pain and suffering was not against great weight and preponderance of the evidence despite expert testimony of pain and suffering).

If there is some principle by which these cases can be fairly distinguished and reconciled, it is difficult to articulate. The cases perhaps indicate that appellate courts are more reluctant to hold jury findings of no damages for pain and suffering contrary to the great weight and preponderance of the evidence when the indicia of injury and damages are more subjective than objective. The more evidence of outward signs of pain, the less findings of damages depend upon the claimant's own feelings and complaints, the more likely appellate courts are to overturn jury findings of no damages for pain and suffering.

As difficult as a distinguishing principle is to define, it is still more difficult to apply. In the end, we must be guided by the general rule that the finding of the jury is entitled to great deference by the appellate court unless the record reflects that the jury was motivated by passion, prejudice, or something other than conscientious conviction. *See Herbert v. Herbert*, 754 S.W.2d 141, 143, (Tex.1988); *McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex.App.—Fort Worth 1987, no writ). A jury finding cannot be set aside on appeal merely because the court would have weighed the evidence differently or reached another conclusion, but only if it is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651, (Tex.1988); *McGuffin*, 732 S.W.2d at 428.

In this case we find nothing to indicate that the jury was improperly motivated or that they based their findings of $1,479 past medical expenses and no other damages on anything but conscientious conviction. Blizzard's complaints were almost entirely subjective. She obtained only occasional medical attention, no hospitalization or surgery, and almost no medication. Only two physicians testified, neither of whom is any stranger to litigation. The credibility of both was seriously undermined by evidence of their respective propensities to testify mostly for either plaintiffs or defendants. On this record, we cannot conclude that the jury's verdict is manifestly wrong or unjust.

Blizzard argues that because no witness at trial disputed that she was injured in the accident, the jury could not fail to find at least some damages for pain and suffering, impairment and lost earnings. The mere fact of injury, however, does not prove compensable pain and suffering, and certainly not impairment and lost earnings, as this case shows. The jury could reasonably have believed that Blizzard should fairly be compensated for seeking enough medical care to ensure that her injury was not serious, but that she never suffered pain warranting a monetary award. *See*

*Armstead v. Harvey*, 390 S.W.2d 871, 872 (Tex.Civ.App.—Texarkana 1965, no writ).

Accordingly, we overrule Blizzard's second point of error.

**B**

In point of error ten, Blizzard complains that the trial court erred in not awarding her the $1,479 past medical expenses found by the jury. Alternatively, Blizzard argues that the trial court should have granted a new trial because the jury's finding of $1,479 damages resulting from her injury fatally conflicts with their negative answer to whether Nationwide had failed to Blizzard pay the personal injury benefits to which she was entitled.

■ The jury's failure to find that Nationwide failed to pay Blizzard the benefits to which she was entitled does not equate to an affirmative finding that Nationwide did pay Blizzard all such benefits. At least in this context, the jury's negative answer does not establish the contrary of the question asked. *See Grenwelge v. Shamrock Reconstructors, Inc.*, 705 S.W.2d 693, 694 (Tex.1986). The answer means only that Blizzard failed to prove that Nationwide did not pay her all benefits she was due. *See C & R Transport, Inc. v. Cambell*, 406 S.W.2d 191, 194 (Tex.1966). The answer cannot be used to deny Blizzard recovery of the $1,479 damages found by the jury.

■ However, the evidence is undisputed that Nationwide had already paid more than the sum found by the jury and was entitled to a credit for those payments. Specifically, the evidence establishes that Nationwide paid $1,447.45 of Blizzard's medical expenses and had been charged another $165, for a total of $1,537.45. Crediting the payments made against the amount found by the jury leaves nothing for the trial court to award.

■ The finding of $1,479 damages does not conflict with the failure to find nonpayment of benefits. The jury may well have believed that Blizzard's reasonable dam-

ages were $1,479 and that Nationwide had already paid her that sum and more. The conflict Blizzard suggests simply does not exist.

We conclude that the trial court did not err in denying Blizzard recovery of the $1,479 found by the jury. Blizzard's tenth point of error is consequently overruled.

**C**

In point of error eleven Blizzard complains that the trial court erred in refusing to award her attorney fees for legal services in the trial court as found by the jury. In point of error four Blizzard argues that the jury's failure to find attorney fees on appeal is contrary to the overwhelming evidence.[4]

■ Blizzard contends that she is entitled under section 38.001 of the Texas Civil Practice and Remedies Code to attorney fees for recovering on her policy claims. *See State Farm Mut. Auto. Ins. Co. v. Clark*, 694 S.W.2d 572 (Tex.App.—Corpus Christi 1985, no writ). Assuming, without deciding, that section 38.001 authorizes recovery of attorney fees for successful claims on uninsured motorist and personal injury protection provisions of automobile policies, Blizzard is not entitled to recover attorney fees because she did not prevail on her claim. We recognize that a claimant may be entitled to recover attorney fees for prevailing on a section 38.001 claim even if the amount recovered on the claim is entirely offset by an amount awarded on an opposing party's claim. *McKinley v. Drozd*, 685 S.W.2d 7 (Tex.1985).

However, that rule does not apply in a case like this one in which the damages found have already been paid. It is one thing to allow a party an award of attorney fees on a successful claim notwithstanding an opposing party's success on an offsetting claim. It is quite another to allow attorney fees on a claim which, although successful, was paid in full before trial. Blizzard was not awarded any recovery on her claim, not

**4.** In point of error three, Blizzard complains that there is no evidence to support the jury's failure to find attorney fees on appeal. At oral argument Blizzard's counsel conceded that this point is without merit and withdrew it.

because Nationwide was entitled to an offset, but because Nationwide had already paid Blizzard all the damages she was able to prove. In these circumstances, we conclude that Blizzard is not entitled to recover attorney fees.

Blizzard's eleventh point of error is overruled. Inasmuch as we conclude that Blizzard is not entitled to recover attorney fees, we need not consider her fourth point of error.

### III

In a cross-point of error Nationwide complains that the trial court erred in refusing to award it attorney fees found by the jury, based upon jury findings that Blizzard's DTPA claims were brought in bad faith and for purposes of harassment. The trial court apparently concluded that Blizzard's DTPA claims were not groundless, and that the jury findings alone did not authorize an award of attorney fees to Nationwide.

Nationwide's claim for attorney fees is based upon section 17.50(c) of the DTPA, which authorizes an award of attorney fees to defendants in DTPA cases as follows:

> On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for purposes of harassment, the court shall award to the defendant reasonable and necessary attorney's fees and court costs.

The statute prescribes three factors to be employed in determining whether attorney fees are to be awarded, namely, whether the plaintiff's action is (1) groundless, (2) brought in bad faith, or (3) brought for purposes of harassment. The cases have been divided on what combination of factors must be found before attorney fees can be awarded. Strangely, however, the cases have generally agreed, contrary to the plain language of the statute, that in a jury trial, the issues of bad faith and harassment are for the jury and not for the court.

The first reported case to consider section 17.50(c) was *Bray v. Curtis*, 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). The trial court in that case submitted a single question to the jury inquiring whether DTPA claims were groundless and brought in bad faith. The jury answered the question negatively. The court of appeals did not address whether the issues were properly for the court or jury.

The first reported case to consider whether the factors under section 17.50(c) are to be determined by the court or the jury is *O'Shea v. International Business Machines Corp.*, 578 S.W.2d 844 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). The jury in that case found that the DTPA claims were groundless and brought in bad faith or for the purpose of harassment. On appeal, the plaintiff complained that the trial court erred in submitting these issues to the jury. We set out the appellate court's entire analysis of the plaintiff's complaint:

> A law review article dealing with this point says, with very little discussion, that undoubtedly this is not an issue for the jury. A well written article by William Dean Leikam, *Woods v. Littleton; Consumerism Comes of Age*, 18 South Texas Law Journal 477 (1977), states the following:
>
> > The test that Section (c) provides is a two-pronged one: the action must be groundless and brought for the purpose of harassment. Section (c) further states that "on a finding by the court" that the action was groundless, the court can award to defendant reasonable attorney's fees. It would appear from the wording of the article, at least from a defense standpoint, that this is a finding that must be made by the court, perhaps on motion by the attorney, but it is not an affirmative defense and does not have to be plead and proved as such. It most certainly is not an issue for the jury. From the plaintiff's standpoint the opposite stance would be true. It would be especially desirable from the plaintiff's view, if the case has any merit at all, to magnify the great prejudicial effect produced by a large corporate defend-

ant attempting to prove up attorney's fees against an individual, preferably low income, consumer, who has dared to assert his rights to obtain justice.

IBM points out that the Texas Supreme Court and the Courts of Civil Appeals have continuously held that it is the province of the jury to determine questions of fact. But to empower or authorize a jury to find that an action under Section 17.50(c) of the subject Act is groundless and brought in bad faith or for the purpose of harassment, is to assume that the jury is legally qualified to make such a finding. We find no such legislative intent from the wording of Section (c) of the Act. We interpret the wording "On a finding by the court that the action under this section was groundless ...", to mean that the court .must make such findings based on undisputed fact issues, law issues or jury findings. If the evidence fails to raise jury issues on which a judgment for counter-claimant O'Shea could be properly awarded, the suit would be "groundless" as a matter of law. However, whether the suit is brought in "bad faith" or "for the purpose of harassment" would in the usual case present a jury issue. The wording of the Act to the effect that "... the court may award to the defendant reasonable attorney's fees in relation to the amount of work expended, and court costs", apparently posed no question that the court therein meant the "court" and IBM requested no special issue on this point. We hold that the trial court committed error in submitting this issue to the jury as it did and that the award of attorney's fees to IBM based upon the jury's finding was improper.

*Id.* at 848. Notably missing from this analysis is any effort to reconcile the holding with the plain language of section 17.50(c). Indeed, no compelling reason is offered for the conclusion that bad faith and harassment must be jury issues. Even the predicted positions plaintiffs and defendants would take, contained in the lengthy quote from the law journal article, are contrary to the positions of the parties in the case. The opinion simply offers no reason for ignoring the clear requirement of section 17.50(c) that the findings necessary to an award of attorney fees be made by the court.

For the most part, *O'Shea* has been followed without criticism. In *Genico Distributors, Inc. v. First National Bank*, 616 S.W.2d 418 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.), the trial court awarded attorney fees under section 17.50(c), based upon its own determination that the DTPA claims were groundless and a jury finding that they had been brought in bad faith. Affirming the trial court, the court of appeals merely cited and summarized *O'Shea* without analyzing whether bad faith was an issue for the court or for the jury.

In *Computer Business Services, Inc. v. West*, 627 S.W.2d 759 (Tex.App.—Tyler 1981, writ ref'd n.r.e.), the trial court refused to award attorney fees after the jury found that the DTPA claims there had not been brought in bad faith. Defendant asserted on appeal that section 17.50(c) authorized an award of attorney fees upon a finding of groundlessness alone, without any finding of bad faith or harassment. The court of appeals rejected this argument, and then added:

The courts have been divided on how the "groundless and bad faith" issues are to be determined. See *Brunstetter v. Southern*, 619 S.W.2d 557 (Tex.Civ.App.—San Antonio 1981, no writ). We believe, however, the best interpretation of the statute was by the Houston Court in *O'Shea....* In *O'Shea* the court held that "groundless" was an issue to be determined by the court but "bad faith and harrassment [sic]" were .issues for the jury. Thus, for the defendant to recover attorney's fees under the Deceptive Trade Practices Act, he must secure a jury finding of bad faith or harrassment [sic] *and* a court determination that the suit is groundless. This procedure was followed by the Texarkana Court of Appeals in *Genico....* Therefore, the defendant having failed to secure an affirmative jury finding as to bad faith is

precluded from recovering attorney's fees.

627 S.W.2d at 761. As can be seen, the court offered no explanation of its approval of *O'Shea.*

In *LaChance v. McKown,* 649 S.W.2d 658 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.), the trial court found the DTPA claims were groundless, and the jury found that they were brought in bad faith and for purposes of harassment. The court of appeals held that these were the findings required for an award of attorney fees under section 17.50(c), citing *West* and *Genico.* The court went on, however, to hold that the evidence did not support the findings of groundlessness and harassment.

In *Parks v. McDougall,* 659 S.W.2d 875 (Tex.App.—San Antonio 1983, no writ), the trial court found that the DTPA claims were groundless and awarded attorney fees without any court or jury finding of bad faith or harassment. To sustain the award on appeal, the defendant argued that a finding of bad faith was implicit in the court's finding of groundlessness. The court of appeals disagreed and reversed. Citing *LaChance, West, Genico* and *O'Shea,* the court concluded:

> We hold that the issue of bad faith or harassment was of concern to the jury and should have been submitted to them for determination. Appellee's failure to secure an affirmative jury finding as to bad faith or harassment precluded the recovery of attorney's fees.

The court did not explain how the jury's concern had been discerned or why the existence of any such concern should override the language of section 17.50(c).

Notwithstanding this consensus of the courts of appeals, the supreme court has suggested that these cases may not be correct. In *Leissner v. Schott,* 668 S.W.2d 686 (Tex.1984), the jury found that the DTPA claims were brought in bad faith and for purposes of harassment, but the trial court found that the claims were not groundless and denied recovery of attorney fees. The court of appeals reversed, holding that the finding of harassment was alone sufficient for recovery of attorney

fees under section 17.50(c). *Schott v. Leissner,* 659 S.W.2d 752 (Tex.App.—Corpus Christi 1983), *writ ref'd n.r.e. sub nom. Leissner v. Schott,* 668 S.W.2d 686 (Tex.1984). The court added:

> The collateral issue of whether the issues of groundlessness, bad faith and harassment present questions for the court, the jury or both has been approached several times. The courts ... seemed to have reached a consensus that the issue of groundlessness is a law question to be determined by the court, while the questions of bad faith and harassment are issues for the jury....
>
> ... Following the rule established in the cases of *Genico Distributors, O'Shea,* and *West,* we acknowledge that the question of whether a lawsuit is brought for the purpose of harassment is a fact question for the jury.

659 S.W.2d at 753–754. The supreme court expressly did not approve these observations of the court of appeals, stating:

> We refuse the application for writ of error, finding no reversible error. In doing so, we do not decide whether the court of appeals was correct in stating that the issues of bad faith and harassment are for the jury. Although an award under § 17.50(c) is to be based "[o]n a finding by the court," a number of lower court decisions have held that the court is to determine whether a suit is groundless, but that the jury determines whether the suit was brought in bad faith or for the purpose of harassment. *See* [*Parks, LaChance, West, Genico, O'Shea* and *Bray* ]. The validity of this interpretation is not before us. Accordingly, we reserve judgment on whether all findings required by § 17.50(c) must be made by the trial court.

*Id.* at 686–687.

Since *Leissner,* the courts of appeals have not had occasion to address directly the issue whether the findings required by section 17.50(c) are to be made by the court or the jury. In *Wickersham Ford, Inc. v. Orange County,* 701 S.W.2d 344 (Tex.App.—Beaumont 1985, no writ), the trial court

refused to award attorney fees under section 17.50(c) despite jury findings that the DTPA claims in the case had been brought in bad faith and for purposes of harassment. The parties had stipulated that attorney fees were "to be awarded conditioned upon and consistent with ... findings of the jury in said cause." *Id.* at 350. The court of appeals reversed the judgment of the trial court and awarded attorney fees, holding that the issue of harassment is for the jury. The court of appeals cited the court of appeals' opinion in *Leissner* and did not refer to the supreme court's opinion. The court of appeals also based its holding on the parties' stipulation which contemplated a finding by the jury rather than by the court.

In *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d 470 (Tex.App. —Dallas 1987, writ denied), this court held that the trial court properly awarded attorney fees under section 17.50(c) based upon a jury finding that the DTPA claims in that case had been brought in bad faith and for purposes of harassment. The court rejected the argument that a finding of groundlessness by the trial court was also required, noting that the supreme court in *Leissner* had approved an attorney fee award based solely upon a jury finding of harassment.

The issue of whether the trial court or the jury must make the necessary findings under section 17.50(c) is squarely presented in the instant case. Under *Leissner* and *Shenandoah*, the jury finding in this case that Blizzard brought her DTPA claims for purposes of harassment would authorize an award of attorney fees. However, the trial court refused to award attorney fees despite the jury finding, in essence substituting its own finding for the jury's. We hold that only the trial court was authorized to make the findings required under section 17.50(c) and did not err in so doing. The jury's finding was merely advisory.

Our holding is based upon the first six words of section 17.50(c), "On a finding by the court". The meaning of these words is, we think, inescapably clear. We have

found nothing in all the cases which have considered these words to indicate why they should be deprived their plain meaning. Trial courts certainly have the expertise and even the duty to determine, not only whether litigation is "groundless", but whether it is motivated by "bad faith" or for "harassment". *See* TEX R.CIV.P. 13. Courts are at least as competent as juries, if not more so, to determine the motivation of parties in litigation. We fail to see how allowing courts to make such determinations under section 17.50(c) differs from their responsibility under Texas Rule of Civil Procedure 13. Irrespective of such considerations, the decision whether the court or jury is better able to find groundlessness, bad faith and harassment is not ours to make. The controlling consideration is that the Legislature, exercising its proper power, has expressly assigned the responsibility for making section 17.50(c) findings to the courts. We believe this clear expression of the Legislature must be followed.

■ We therefore decline to follow the holding of *Wickersham* or the dicta in the other cases we have discussed above. We hold, instead, that the findings prerequisite to an award of attorney fees under section 17.50(c) must be made by the court and not by the jury.

■ In the present case, we presume in the absence of any request for findings from the trial court, that by denying Nationwide attorney fees under section 17.-50(c), the trial court implicitly found, contrary to the jury, that Blizzard did not bring her DTPA claims for purposes of harassment. *See* TEX.R.CIV.P. 299. Nationwide does not argue that this implicit finding by the trial court is so contrary to the evidence as to be manifestly unjust, and we conclude, from our own review of the record, that it is not.

We overrule Nationwide's cross-point of error.[5]

---

5. We need not address Blizzard's points of error     five through eight, in which she contends that

the evidence was insufficient to submit the is-
sues of bad faith and harassment to the jury or
to support the jury's findings, nor need we ad-

dress Blizzard's point of error nine, in which
she argues that the trial court erred in defining
"bad faith" as "lack of honesty in fact".