# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.03-02-00069-CV

**Mary Ann Roberts, Appellant**

**v.**

**Jan Ogletree, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. GN001414, HONORABLE JON N. WISSER, JUDGE PRESIDING**

Appellant Mary Ann Roberts appeals from a trial-court judgment based on a jury=s verdict in a vehicular accident case. The jury awarded Roberts a fraction of her claim for past medical expenses but awarded no damages for past or future physical pain and mental anguish, past or future physical impairment, or future medical expenses. By one point of error, Roberts claims that the damages awarded her are against the great weight and preponderance of the evidence and are manifestly unjust. Because we find there is factually sufficient evidence to support the jury=s findings, we affirm the judgment.

## FACTUAL BACKGROUND

Roberts filed suit on May 15, 2000, against Jan Ogletree for damages arising out of an automobile collision on July 23, 1998. Ogletree rear-ended Roberts as she waited at a red traffic light. It was a low-speed collision, and pictures taken of the two cars after the accident reveal little visible damage.

Ogletree had come to a stop behind Roberts=s car at the intersection; however, his foot slipped off the brake and he rolled into Roberts=s car before he could hit the brake again. Roberts got out of her car and spoke briefly to Ogletree but he left before Roberts could call the police to make a report. Roberts returned home and called the sheriff=s department from there. Roberts admitted that she was not even sure her car moved forward when Ogletree hit her. She further testified that she stayed home from work the day of the collision in part because she was upset at being treated rudely by Ogletree at the scene.

While waiting for the sheriff=s department to arrive at her home, Roberts reported that she started getting a bad headache. That afternoon she went to see her family practitioner, Dr. Berry. Dr. Berry took an x-ray of her neck, but the results were not admitted into evidence. Dr. Berry eventually referred Roberts to Dr. Harris, a spine specialist. Roberts first saw Dr. Harris on October 2, 1998. Dr. Harris prescribed physical therapy two to three times a week, which Roberts continues to receive. In addition, every four to six weeks for approximately a year after the collision, Roberts received various injections from Dr. Harris for her pain. In November 1998, Roberts had an MRI; however, the results did not change Dr. Harris=s recommendations.

Roberts admitted that after seeing her physician on the day of the collision she did not go back for three weeks. At this second visit, Dr. Berry noted that Roberts=s neck was better and she had

regained full range of motion. Roberts further admitted that she was referred to Dr. Harris nearly two and a half months after the collision for back pain related to a pregnancy injury, not for the neck pain or headaches which were the basis of this lawsuit. In addition, another doctor to whom she was referred by Dr. Harris found no neurological problems.

On November 3, 1999, Roberts broadsided a car that had pulled out in front of her. Roberts testified that she was traveling about thirty miles per hour when she hit the other car, causing substantial damage to her car. Roberts said that her pain increased for several weeks after this second accident but eventually dissipated, leaving only the pain she had experienced after the July 1998 collision.

In February 2000, Dr. Wasserburger, another spine specialist assumed treatment of Roberts. Roberts underwent numerous diagnostic tests (some of which were painful) to identify the source of her neck pain and headaches. According to Dr. Wasserburger, Roberts=s neck was slightly pulled forward and she had a lot of tightness in the muscles on the left side of her neck. The MRI done in 1998 showed only normal degenerative (wear and tear) changes. In 2000, Roberts had another MRI which showed osteophytesCbone spurs on the spine. Osteophytes are common wear and tear changes which might be expected as result of the degenerative changes shown in the 1998 MRI. Dr. Wasserburger admitted that no diagnostic test has pinpointed the cause of Roberts=s neck pain but the osteophytes could be a possible explanation for her pain. In 2001, Roberts finally had surgery to fuse her third and fourth vertebra. Roberts=s surgery reduced her headaches but the pain in the left side of her neck was still present at the time of trial.

## DISCUSSION

Roberts argues that the jury=s answers to the six parts of Question No. 2 are against the great weight and preponderance of the evidence and are manifestly unjust. Question No. 2 and the attendant pertinent instructions, as well as the jury=s answer to each part, are listed below:

What sum of money, if paid now in cash, would fairly and reasonably compensate Mary Ann Roberts for her injuries, if any, that resulted from the occurrence in question?

Do not include any amount for any condition *not resulting from* the occurrence in question.

a.  Physical pain and mental anguish in the past:                    $   -0-

b.  Physical pain and mental anguish which in reasonable probability
    will be sustained in the future:                                 $   -0-

c.  Physical impairment sustained in the past:             $   -0-

d.  Physical impairment that, in reasonable probability, will be
    sustained in the future:                                         $   -0-

e.  Reasonable and necessary medical care in the past:               $ 1,322

f.  Reasonable and necessary medical care that, in reasonable
    probability will be sustained in the future:          $   -0-

The court rendered judgment on the verdict that Roberts recover $1,322.00 plus interest and court costs. Roberts=s motion for new trial complaining of factual insufficiency to support the jury=s answers was overruled by operation of law.

4

In considering a challenge that the verdict is against the great weight and preponderance of the evidence, we must weigh all the evidence; we will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re King=s Estate*, 244 S.W.2d 660, 661 (Tex. 1951). The jury=s findings are entitled to great deference and will not be reversed unless the record indicates the jury was influenced by passion, prejudice, improper motive, or something other than conscientious conviction. *Herbert v. Herbert*, 754 S.W.2d 141, 143 (Tex. 1998). A jury=s failure to find a fact need not be supported by affirmative evidence, but the jury cannot refuse to find a fact in the face of overwhelming evidence of the existence of the fact. *Russell v. Hankerson*, 771 S.W.2d 650, 653 (Tex. App.CCorpus Christi 1989, writ denied). We are mindful that the jury must determine the credibility of the witnesses and the weight to be given their testimony. *Leyva v. Pacheco*, 358 S.W.2d 547, 549 (Tex. 1962). The jury may believe one witness and disbelieve another and resolve inconsistencies in any witness=s testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). We cannot substitute our judgment for the jury=s merely because we would have weighed the evidence differently or reached another conclusion. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex. 1988); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

Much of Roberts=s direct testimony was contradicted by her testimony on cross-examination. On direct examination, Roberts testified at length about having to change jobs because her neck pain prevented her from working the long hours in overtime necessary at the position she held prior to the accident. Roberts testified that she worried about having to change jobs because she felt it would diminish her chances of advancing her career. In addition, her family is dependent on her paycheck. On

**5**

cross-examination she admitted that her salary at her new job is almost $10,000 per year more than her old salary and she works fewer hours. Further, Roberts testified that she had never filed a personal injury lawsuit before the present one. However, when presented with the petition and pleadings from a personal injury suit she had filed in 1995, Roberts testified that she had forgotten about it. Roberts=s inconsistencies may have diminished her credibility and thus the jury may not have felt inclined to believe her testimony that the July 1998 collision was the cause of her reported headaches and neck pain.

The jury was free to disbelieve, and apparently did disbelieve, Dr. Wasserburger=s opinion that the treatment received by Roberts was necessary and due to injury sustained in the 1998 collision. Uncontradicted testimony of expert witnesses must be taken as true insofar as it establishes facts; but opinions about deductions from those facts are not binding on the jury. *See Gregory v. Texas Employers Ins. Ass=n*, 530 S.W.2d 105, 107 (Tex. 1975). Dr. Wasserburger did not even meet Roberts until a year and a half after Roberts=s collision with Ogletree; the doctor testified that she relied on other doctors= notes to inform her about Roberts=s medical history after the July 1998 collision. The jury could have found that Dr. Wasserburger was too far removed from Roberts=s medical care following the July 1998 collision to accord her testimony much weight. Further, Dr. Wasserburger=s inability to correlate Roberts=s subjective complaints with objective diagnostic test results left the jurors free to draw their own conclusions about the cause and extent of Roberts=s pain, if any.

The jury generally has great discretion in considering evidence on the issue of damages. *McGalliard*, 722 S.W.2d at 697. When uncontroverted, objective evidence of an injury is presented and the causation of the injury has been established, courts are more likely to overturn jury findings of no damages for past physical pain and impairment. *Morse v. Delgado*, 975 S.W.2d 378, 381 (Tex. App.CWaco 1998, no pet.); *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex. App.CDallas 1988, no writ). On the other hand, the jury may properly award zero or nominal damages where there is both subjective and objective evidence of injury so long as the main indicia of the injuries are subjective in nature. *Lamb v. Franklin*, 976 S.W.2d 339, 341 (Tex. App.CAmarillo 1998, no pet.); *see Morse*, 975 S.W.2d at 381; *Sanchez v. King*, 932 S.W.2d 177, 181-82 (Tex. App.CEl Paso 1996, no writ); *Hammett v. Zimmerman*, 804 S.W.2d 663, 666 (Tex. App.CFort Worth 1991, no writ); *Blizzard*, 756 S.W.2d at 806.

All of Roberts=s diagnoses were based on her subjective complaints. Objective diagnostic tests did not reveal any abnormalities that correlated to the neck pain and headaches she described. Roberts initially went to her family doctor who recorded that she suffered from a limited range of motion and pain, as reported by Roberts. The range of motion returned to normal but Roberts still reported headaches and neck pain. Roberts underwent numerous diagnostic tests, including two MRIs and an EMG, but none of these test results explained Roberts=s pain. Roberts=s doctors had to rely on her descriptions of the pain, but no test revealed a physical explanation for the pain Roberts described. Thus, the existence and extent of Roberts=s pain was based solely on Roberts=s own reports.

The jury=s award of zero damages for past and future physical impairment, past and future physical pain and mental anguish, and future medical bills is not inconsistent with its award of past medical costs. The jury could easily have inferred that Roberts did not suffer any injury but that it was reasonable for Roberts to see a doctor and have an MRI taken to determine if she had received an injury. Question No. 1 posed to the jury was simply, ADid the negligence, if any, of Jan Ogletree proximately cause the occurrence in question?@ The jury was not asked whether Ogletree proximately caused the *injuries* in question. The jury=s answer to Question No. 1 only constitutes a finding that Ogletree=s negligence proximately caused the collision. It was Roberts=s burden to prove not only that Ogletree=s negligence caused the collision, but also that the collision caused Roberts=s neck pain and headaches. Roberts failed to carry that burden.

The jury was also entitled to believe that Roberts=s complaints were the result of other unrelated conditions or injuries. *Biggs v. GSC Enters., Inc.*, 8 S.W.3d 765, 768-69 (Tex. App.CFort Worth 1999, no pet.); *Campos v. Saide Co.*, 957 S.W.2d 168, 169 (Tex. App.CSan Antonio 1997, no pet.); *Hilland v. Arnold*, 856 S.W.2d 240, 242-43 (Tex. App.CTexarkana 1993, no writ). The jury could have reasonably believed that Roberts=s subjective pain was stress-induced, or was a result of the ongoing back problem Roberts developed during a previous pregnancy or Roberts=s second car accident. Complaints of nagging neck pain and headache do not figure prominently in the medical records until months after the July 1998 collision. Also, Roberts=s second car accident was more serious than the first, and Roberts=s doctors visits and medical costs increased markedly after the second car accident. Based on the

**8**

testimony at trial, the jury could have reasonably drawn the conclusion that Roberts=s pain was not a result of the July 1998 collision but was perhaps the result of other, unrelated events.

## CONCLUSION

Considering all the evidence in the record, we conclude that the jury=s findings are not against the great weight of the evidence and are not manifestly unjust. We affirm the trial court=s judgment.

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: October 31, 2002

Do Not Publish

9