# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING EN BANC

### NO. 03-04-00813-CV

**Appellants, Dr. Phillip Osborne and Deborah Osborne //
Cross-Appellant, State Farm Lloyds**

**v.**

**Appellee, Jauregui, Inc. // Cross-Appellees, Dr. Phillip Osborne and Deborah Osborne**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. 99-08727, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Because I would hold that the Osbornes are entitled to attorney's fees as prevailing parties under the DTPA and that State Farm's claim for subrogation rights should be remanded to the trial court for reconsideration in light of *Fortis Benefits v. Cantu*, 234 S.W.3d 642 (Tex. 2007), I respectfully dissent.

### Attorney's Fees

The majority correctly states that a plaintiff "who is awarded actual damages under the DTPA should also be awarded attorney's fees, even though the damage award is entirely offset by an opposing claim." *See McKinley v. Drozd*, 685 S.W.2d 7, 10 (Tex. 1985). While *McKinley* involved a DTPA claim offset by a counterclaim rather than settlements from other defendants, the

court emphasized the "legislative mandate to liberally construe the [DTPA] to protect consumers from deceptive practices, and the legislative intent to provide consumers with an efficient and economical means to seek redress for those deceptive practices." *Id*. at 9.

The Texas Supreme Court has not, however, ruled on whether the reasoning in *McKinley* would apply in a situation where the damages owed by one defendant were entirely offset by settlement amounts from other defendants. The appellate courts have been split in determining whether a plaintiff "prevails" under the DTPA where settlement amounts from other defendants exceed the judgment. The majority relies primarily on *Hamra v. Gulden*, 898 S.W.2d 16, 19 (Tex. App.—Dallas 1995, writ dism'd w.o.j.), which held that a plaintiff who sued two defendants jointly and severally did not prevail on a DTPA claim where the settlement credit from one defendant exceeded the damages found at trial, citing only *Blizzard v. Nationwide Mutual Fire Insurance Co.*, 756 S.W.2d 801, 806 (Tex. App.—Dallas 1988, no writ), to support this holding.

The payments made to the plaintiff prior to trial in *Blizzard*, however, constituted insurance payments from her insurer. *Id*. at 806-07. The plaintiff sued her insurance company, but the amount of damages found by the jury at trial did not exceed the total amount of insurance payments paid to the plaintiff by the defendant prior to trial. These pretrial payments, made by the defendant subject to the judgment rather than a settling party, resemble the insurance benefits paid prior to trial by the defendant in *Allstate Insurance Co. v. Bonner*, 51 S.W.3d 289, 292 (Tex. 2001). The court ruled in *Allstate* that the plaintiff could not recover attorney's fees under the insurance code because the judgment amount owed by a defendant insurance company was entirely offset by benefits previously paid by that defendant. In cases where the amount of damages found by the jury

2

at trial is lower than payments previously paid to the plaintiff *by the defendant* to compensate for such damages, it is reasonable to view the plaintiff as not having prevailed on a claim.

In the present case, however, the jury did not find that Jauregui owed less in damages than some amount that Jauregui had already paid to the Osbornes. Instead, the jury found Jauregui responsible for $835,000 in damages, while Jauregui reaped the benefits of its refusal to settle by offsetting the entire judgment with settlement funds paid by other defendants.

I find the facts in the instant case to more closely resemble those in *Roberts v. Grande*, 868 S.W.2d 956, 962 (Tex. App—Houston [14th Dist.] 1994, no writ), in which the plaintiff was allowed an award of attorney's fees even though the judgment was entirely offset by settlement amounts. "[A]pplying an offset from a previous settlement should not deprive a consumer of its attorney's fees." *Id*. As a result, I would hold that the Osbornes qualify as prevailing parties under the DTPA and therefore should be awarded attorney's fees, subject to the requirement in *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006), that such fees be segregated between recoverable and unrecoverable claims.

The majority's holding that the Osbornes are not prevailing parties under the DTPA essentially rewards Jauregui for refusing to negotiate a settlement. The Osbornes made a settlement offer to Jauregui prior to filing suit in the amount of $866,000, which proved to be a reasonable demand in light of the subsequent jury award, at a time when the Osbornes' attorney's fees had only reached $22,000. Jauregui refused to make an offer of settlement within a reasonable range of that demand and responded with a counter-offer of only $12,810, forcing the Osbornes to incur an

3

additional $1,127,641.30 in attorney's fees.[1]  The Osbornes should not be penalized for proceeding to trial when their good-faith attempt to negotiate a settlement prior to filing suit was refused.

Awarding attorney's fees to the Osbornes before applying the settlement credit would be consistent with the reasoning in *McKinley* and the purpose of the DTPA.  The Texas legislature determined that the DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."  Tex. Bus. & Com. Code Ann. § 17.44(a) (West 2002). Because I would hold that the Osbornes are prevailing parties under the DTPA, I dissent from the majority's holding that the Osbornes are not entitled to attorney's fees.

### Subrogation

The majority holds that State Farm's contractual right of subrogation displaces any equitable considerations regarding whether the Osbornes have been "made whole" for their damages, and further holds that even under an equitable determination of subrogation rights, State Farm is entitled to the settlement proceeds because the Osbornes have already been "made whole" by insurance payments totaling $1,874,687.28.

The majority cites the Texas Supreme Court's recent holding in *Fortis Benefits*, 234 S.W.3d at 650, that contract-based subrogation rights trump equitable considerations, which are

---

[1]  It is not uncommon for an attorney's fee award to exceed the damages recovered.  *Hoover Slovacek L.L.P. v. Walton*, 206 S.W.3d 557, 563 n.8 (Tex. 2006).

to be used by default in the absence of a contractual right to subrogation.  The contract at issue in *Fortis* established a right of subrogation, stating, "Upon payment of benefits, *We will be subrogated to all rights of recovery a Covered Person may have against any person or organization. . . .*  Such right extends to the proceeds of any settlement or judgment; but is limited to the amount of benefits We have paid."  *Id*. at 645 n.11.  The Texas Supreme Court noted that because the provision was "not imprecise or ambiguous" and it gave Fortis "an unfettered right to recover the proceeds from the settlement," equitable considerations must give way to the language of the contract.  *Id.* at 650-51.

However, the subrogation provision in the Osbornes' homeowners' insurance policy with State Farm does not contain the type of precise and unambiguous language found in the *Fortis* subrogation provision.  The subrogation provision found in the Osbornes' policy reads in its entirety:

> **Subrogation.**  An **insured** may waive in writing before a loss all rights of recovery against any person.  If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.
>
> If an assignment is sought, an **insured** must sign and deliver all related papers and cooperate with us.

This provision, which merely states that State Farm "may" require an assignment of rights, is significantly more ambiguous than the provision at issue in *Fortis*, which states that the insurer "*will* be subrogated to *all* rights of recovery," including "the proceeds of *any* settlement or judgment."  *Id.* at 645 n.11 (original emphasis removed, emphases added).

5

Because the trial court's order denying subrogation rights to State Farm was issued prior to *Fortis* and thus before specific contractual subrogation rights were deemed controlling over equitable principles, the trial court never had an opportunity to evaluate and interpret the subrogation clause in the Osbornes' homeowners' policy. Therefore, the appropriate remedy would be to remand to the trial court for a review of the subrogation provision in order to determine whether the language is sufficiently precise and unambiguous to control over equitable subrogation principles, in light of the Texas Supreme Court's holding in *Fortis*.

If the Osbornes' contractual subrogation provision was found to be too vague and ambiguous to displace equitable considerations, I would point out that the trial court did not abuse its discretion in denying subrogation rights to State Farm, in light of the deference afforded to a trial court's equitable determination. In a determination of subrogation based purely on equitable factors, "[a] trial court's balancing of the equities should not be disturbed on appeal unless a showing is made that it would be inequitable to allow the judgment to stand." *Esparza v. Scott & White Health Plan*, 909 S.W.2d 548, 552 (Tex. App.—Austin 1995, writ denied).

The trial court may have considered, for example, that State Farm, by arguing at trial and on appeal that the Osbornes are not entitled to attorney's fees under the DTPA, asserted a position that was adverse to the very parties whose interests State Farm, as an insurer, was expected to protect. The fact that State Farm attempts to compromise the Osbornes' efforts to achieve the fullest possible recovery suggests that equity should not favor State Farm in a determination of subrogation rights.

6

Furthermore, State Farm's statements at trial directly conflict with its argument on appeal that the Osbornes were "made whole" because the jury returned a judgment of $835,158.78 in damages, and the total insurance payments received by the Osbornes exceed this amount. For example, State Farm stated in its third amended petition in intervention that the Osbornes suffered damages at least in the amount of $1,902,247.44. A judicial admission is conclusive upon the party making it, relieves the opposing party's burden of proving the admitted facts, and bars the admitting party from disputing it. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). State Farm also put on an expert, Buddy Henderson, to testify that $1,477,351 was a reasonable cost of repairs for the house and that he relied on this amount in determining that State Farm should pay the full policy limits to the Osbornes. A party's testimony at trial will be treated as a judicial admission if (1) the statement is deliberate, clear, and unequivocal, (2) the statement is contrary to an essential fact embraced in the theory of recovery asserted by the party giving the testimony, (3) the statement is not also destructive of the opposing party's theory of recovery, and (4) it would be unjust to permit a party to recover after he has sworn himself out of court by clear and unequivocal testimony. *Id.* Each of these factors is satisfied with reference to Henderson's expert testimony that the cost of repairs alone could reasonably be $1,477,351. However, State Farm asserts on appeal that the Osbornes' damages are limited to the amount of the jury verdict. Allowing this drastic change in State Farm's damages assessment would create an environment in which insured parties are unable to accept insurance payments from an insurer without fear that in the future, the insurer will claim that it had overpaid and that the excess should be used to offset

7

settlement payments for mental anguish or other uncovered damages. These factors support the trial court's equitable decision to deny subrogation to State Farm.

Even in light of the majority's holding that State Farm's contractual right to subrogation controls over equitable considerations, the fact remains that State Farm failed to allocate the settlement funds to covered versus uncovered losses. The subrogation provision in the Osbornes' policy states that an assignment of rights may be required "to the extent that payment is made by [State Farm]." In a claim for subrogation where settlement amounts are at issue, an insurer bears the burden of showing what amount, if any, of the settlement amounts correspond to amounts paid by it. *Ortiz v. Great S. Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 344 (Tex. 1980). Subrogation should not be awarded if it is not clear what portion of the settlement is intended to compensate for covered losses. *Id.* "In true subrogation cases, where the insurer is bringing the action against the third party, or is participating in the insured's action against the third party, recovery by the insurer is generally limited to the same elements as those for which it has made payment." Lee R. Russ & Thomas F. Segalla, 16 *Couch On Insurance* § 226-52 (3d ed. 2000). It is not clear from the record which types of losses were meant to be covered by the amounts that the Osbornes received from the settling parties. "[T]he mere fact that an insured receives a recovery from another source may not establish that the amounts recovered correspond to the same elements of loss for which the insured has already recovered from the insurer." *Id*.

While State Farm failed to allocate the settlement funds to covered versus uncovered losses, we can assume that there was ample opportunity to make such an allocation because State Farm asserts in its brief that it assisted "vigorously" in securing the settlements. There is no

evidence that the remaining settlement amounts are allocable to covered damages, rather than uncovered damages such as mental anguish or attorney's fees. State Farm's failure to allocate settlement funds is another issue that should be reviewed by the trial court on remand to determine whether the settlement funds at issue actually reflect payments made by State Farm, as necessary to qualify for assignment under the contractual subrogation provision.

Because I would reverse the trial court's denial of attorney's fees to the Osbornes and remand State Farm's claim for subrogation rights to the trial court for reconsideration in light of *Fortis*, I respectfully dissent.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Patterson, Puryear, Pemberton, Waldrop and Henson

Filed: April 17, 2008

9