

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-17-00014-CV

___

AMANDA HARRIS, APPELLANT

V.

NIDHI GOPAL RANEBENUR, APPELLEE

___

On Appeal from the 236th District Court
Tarrant County, Texas[1]
Trial Court No. 236-271514-14, Honorable Thomas Wilson Lowe, III, Presiding

___

July 3, 2018

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Amanda Harris appeals from a jury verdict and trial court judgment awarding her $1,341 as compensation for past medical expenses resulting from personal injuries sustained when her car was struck from the rear by a car driven by Nidhi Gopal Ranebenur. In a single issue, Harris contends that the verdict is against the great weight and preponderance of the evidence. We affirm the judgment of the trial court.

___

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Second Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

## Background

On April 27, 2012, Nidhi Gopal Ranebenur was returning to work after lunch. Amanda Harris was stopped for a red light at the intersection of the I-35W access road and Western Center Boulevard. As Ranebenur was driving in the outside lane of the service road, she rear-ended the Dodge mini-van driven by Harris. Ranebenur estimates she was travelling at a speed between five and ten miles per hour before she encountered Harris's van. Ranebenur described the impact as a small bump. Harris felt the "pressure" of the impact, but did not identify any specific noise associated with the impact. The air bags did not deploy on either vehicle. There was very minor damage to Harris's van. After the accident, Harris and Ranebenur moved their cars to a nearby parking lot and waited for the police to arrive. Ranebenur asked Harris if she was okay and Harris said she was. Harris also told the police that she was not injured. Harris was walking around after the accident and did not appear injured. Ranebenur was not injured and returned to work. After speaking to the police, Harris went to work.

After a few hours at work, Harris was starting to "hurt," so she left work early and went to the emergency room. Harris told the emergency room personnel that she had pain in her chest and her ankle was "bothering her." After X-rays of her chest and ankle were taken, she was given prescription pain medication and instructions to follow up with a physician in a few days if she was not feeling better.

A few days later, Harris went to a chiropractor for soreness in her upper back and shoulder area. She testified that the soreness in her shoulder started a few days after the accident and she "doesn't recall how long it lasted." The chiropractor treated Harris

two to three times a week for a period of three months. The chiropractic treatment consisted of therapy, ice, exercises, "different kinds of stretches," and a TENS unit. Harris was given a stretchy band and shown exercises for her ankle. She purchased a compression sock, but she does not recall how long she wore it or whether she discontinued using it on her own or because the chiropractor told her to stop. Harris has no idea what caused the ankle problem. She does not recall anything hitting her ankle in the accident.

Harris received chiropractic adjustments on her shoulder, along with ice and stimulation. Her neck pain "didn't last too long." She received treatment on her neck for one and a half months.

The evidence at trial consisted of the testimony of Ranebenur and Harris and exhibits of medical records and expense statements from Harris's medical providers. None of these records revealed any objective signs of injury. Harris's treatment ended on July 17, 2012, when she was released by the chiropractor.

Harris submitted five affidavits of medical bills and medical records pursuant to section 18.001 of the Texas Civil Practice and Remedies Code: (1) Harris Methodist Hospital, $1,284.75 for treatment at the emergency room on April 27, 2012; (2) Texas Medicine Resources, $635 for the emergency room physician; (3) Radiology Associates of North Texas, $139 for X-rays[2]; (4) TLC Chiropractic Center, $7,746 for therapy from

---

[2] This amount reflected ankle and chest X-rays on April 27, 2012, for $33 and $40. There were two X-rays performed after the date her chiropractic care ended: a chest X-ray on August 10, 2012, for $40 and a finger X-ray on September 11, 2012, for $26.

April 30 to July 17, 2012; and (5) Advanced Imaging, $2,200 for an MRI on July 2, 2014. These affidavits were not controverted.

At trial, Ranebenur admitted that she was at fault in the accident. The case went to the jury on the issue of damages only. The jury awarded Harris $0 for physical pain and mental anguish in the past, and $1,341 for reasonable and necessary medical expenses in the past. Harris complains on appeal that the jury's answer to the damages question regarding past medical expenses is against the great weight and preponderance of the evidence.

## Standard of Review

When a party challenges the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and manifestly unjust. *Id.* The factfinder is the sole judge of the witnesses' credibility and may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

The jury generally has great discretion in considering evidence on the issue of damages. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 263 (Tex. App.—Fort Worth 2016, no. pet.).

4

When there is uncontroverted, objective evidence of an injury and the causation of the injury has been established, appellate courts are more likely to overturn a jury finding of no damages for past pain and mental anguish. *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 804-05 (Tex. App.—Dallas 1988, no writ). However, where the evidence of pain is conflicting, scant, or more subjective than objective, appellate courts are generally reluctant to determine that a jury finding of no damages is contrary to the great weight and preponderance of the evidence. *Id.* at 805.

The mere fact of injury does not prove compensable pain and mental anguish. *Id.* For an undisputed injury that is less serious and accompanied only by subjective complaints of pain, a jury may reasonably believe that the injured party should be compensated for seeking enough medical care to ensure that the injury was not serious yet also conclude the injured party never suffered pain warranting a money award. *Id.*

The jury is given more leeway if the plaintiff's complaints are subjective in nature and not supported by objective signs or other evidence. In such cases, a finding of zero damages for pain and suffering will not ordinarily be disturbed on appeal. *See Dollison v. Hayes*, 79 S.W.3d 246, 254 (Tex. App.—Texarkana 2002, no pet.) (verdict form on which jury entered zeros for amounts plaintiff would be compensated for past and future pain and suffering, and which was signed by presiding juror, indicated that jury considered and rejected evidence related to pain and suffering); *McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex. App.—Fort Worth 1987, no writ).

Analysis

Harris challenges the sufficiency of the evidence to support the jury's finding of $1,341 in damages for past medical expenses.[3] She contends that the jury's failure to find the full amount of the uncontroverted emergency room expenses in the amount of $1,992.75 warrants reversal as the finding is against the great weight and preponderance of the evidence as to be manifestly unjust.[4] To assess this complaint, we consider all the evidence pertaining to the nature and extent of injury Harris sustained in the accident. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Harris introduced five medical expense affidavits that were not controverted by Ranebenur. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b), (e)-(f) (West 2015). Section 18.001 is an evidentiary statute that accomplishes three things: (1) it allows for the admissibility, by affidavit, of evidence of the reasonableness and necessity of charges that would otherwise be inadmissible hearsay; (2) it permits the use of otherwise inadmissible hearsay to support findings of fact by the trier of fact; and (3) it provides for exclusion of evidence to the contrary, upon proper objection, in the absence of a properly-filed controverting affidavit. *Id.*; *Hong v. Bennett*, 209 S.W.3d 795, 800 (Tex. App.—Fort Worth 2006, no pet.). An uncontroverted section 18.001(b) affidavit provides legally sufficient—but not conclusive—evidence to support a jury's finding that the amount charged for a service was reasonable and necessary. *Hong*, 209 S.W.3d at 800.

---

[3] In her motion for new trial, Harris also complained of the jury's finding of $0 for physical pain and mental anguish. However, she does not address this element of damages in her appeal.

[4] Other medical affidavits for subsequent care were also admitted into evidence. These affidavits include charges for chiropractic care in the amount of $7,746 and MRI charges of $2,200. Harris does not address these medical expenses in her appeal.

6

Section 18.001 affidavits do not establish that the costs were caused by the defendant's actions or that the plaintiffs are entitled to those costs as a matter of law. *Atwood v. Pietrowicz*, No. 02-10-00010-CV, 2010 Tex. App. LEXIS 8689, at *11 (Tex. App.—Fort Worth Oct. 28, 2010, no pet.) (mem. op.). When causation is contested, such as when there is a dispute over the seriousness of an accident that allegedly caused the medical expenses, the jury is not bound to award the damages set forth in an uncontroverted affidavit under section 18.001, but is entitled to answer the damages issue as it deems appropriate. *Id.* at *12. The affidavits that Harris submitted cannot be construed as conclusively establishing a causal nexus between the accident and her medical expenses. *See Barrajas v. VIA Metro. Transit Auth.*, 945 S.W.2d 207, 209 (Tex. App.— San Antonio 1997, no writ). Ultimately, the determination of what is reasonable and necessary still falls within the province of the jury. *Atwood,* 2010 Tex*.* App. LEXIS 8689, at *12.

The jury heard evidence that Harris's mini-van was stationary when it was struck from behind by a 2003 Mercedes traveling five to ten miles per hour. No air bags deployed on either vehicle. Harris was wearing her seat belt. Immediately after the accident Harris was able to exit her car without any difficulty, exchange information with Ranebenur, and wait for the police. Harris had no visible or objective signs of injury, and denied injury at the scene. Harris drove to work and did not seek any medical attention until several hours later when she went to the emergency room with pain in her chest, shoulder, and ankle. When Harris arrived at the emergency room, the records state Harris had "minimal tenderness" of her chest and ankle. There was no mention of any neck or back problems at that time. X-rays of her ankle revealed no fracture or dislocation, but

there was lateral soft tissue swelling.  X-rays of her chest showed no acute findings.  The discharge diagnosis was chest wall contusion and right ankle sprain.

Several days after the accident, Harris saw a chiropractor with complaints of neck, back, arm, foot, and ankle pain.  Harris testified that she received chiropractic treatment for her left ankle, yet her medical records indicate it was her right ankle.  When questioned, she couldn't remember which ankle was injured.  The ankle injury resolved within a couple of weeks and her back stopped hurting within a couple of months.  Harris could not explain why she continued going for chiropractic treatment for a month after resolution of her complaints.  Harris did not explain why she received two X-rays—another chest X-ray and an X-ray on her fingers—after her treatment with the chiropractor ended on July 17, 2012.  Harris could not recall whether she had received chiropractic treatment before the accident.

No surgical procedure was performed in this case and Harris did not miss any work after the accident.  The jury found Harris's injury was so minimal as to not warrant an award for past pain and suffering.  The jury must have also believed that her injury did not require all of the examinations and treatment she received.  The jury may disbelieve a witness even if uncontradicted.  *Hebert v. Pan American Van Lines, Inc.*, 681 S.W.2d 221, 222 (Tex. App.—Houston [14th Dist.] 1984, no writ).

Directing the Court's attention to the expenses in the amount of $1,992.75 for the emergency room visit, Harris contends that "once the jury awarded the first dollar, it was obligated to award all the dollars absent some evidence in the record that a different event caused or contributed to her injuries."  Whether Harris suffered any significant injury and

8

the severity of any injury was solely within the province of the jury to decide. Apparently the jury determined the extent of any injury Harris may have received from the collision was quite minimal and that only the sum of $1,341 was a reasonable and necessary amount for the examination and treatment she received for such injury. The jury was instructed to determine the damages that would "fairly and reasonably compensate AMANDA HARRIS for her damages, if any, from the occurrence in question." Unless the record demonstrates otherwise, we presume that the jury followed the court's instruction in answering the damages question. *See, e.g., Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003).

Based on the totality of the evidence, the jury could have determined that not all treatment—including treatment at the emergency room—was the result of or caused by the accident. We conclude the evidence here is factually sufficient to support the jury's decision. Having considered the entire record in this case, we hold that the verdict was not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust.

## Conclusion

We overrule Harris's sole issue, and we affirm the trial court's judgment.

Judy C. Parker
Justice

9